SHIRLEY O. COLLINGWOOD v. GENERAL ELECTRIC REAL ESTATE EQUITIES, INC., WALSH PROPERTIES, INC., AND SHARON KAY NELMS

No. 240PA88

(Filed 9 February 1989)

1. **Landlord and Tenant § 8.2— apartment design and construction—no legal duty by manager**

    The pleadings, affidavits, and other materials of record failed to establish that the manager of an apartment complex owed plaintiff tenant a legal duty with respect to the design and construction of the complex.

2. **Landlord and Tenant § 8.2— apartment design and construction—compliance with building codes—landlord not insulated from liability**

    Compliance with applicable building and housing codes as required by N.C.G.S. § 42-42(a)(1) does not insulate landlords from liability for defects in building design or construction.

3. **Landlord and Tenant § 8.2; Customs and Usages § 1— fire safety standards—observing customs of other apartment owners—liability of landlord for negligence**

    Uncontradicted evidence that the owner of an apartment complex observed standards for fire safety customarily followed by the building industry and other apartment complex owners in the area did not absolve the owner from liability for negligence in failing to install additional fire safety features in the common areas of the apartment complex.

4. **Landlord and Tenant § 8.3; Negligence § 47— apartment owner—negligence in failure to install fire safety features—genuine issue of material fact**

    In an action to recover for injuries received by plaintiff when she jumped from the window of her third floor apartment to escape a fire, plaintiff raised a genuine issue of material fact as to whether defendant owner was negligent in failing to take appropriate fire safety precautions in the design and construction of the apartment complex where plaintiff presented materials tending to show that the fire had spread from a second floor apartment to the passageway outside plaintiff's door; the apartment complex was built according to a "Type 6" construction plan, the quickest and cheapest type allowed by the North Carolina Building Codes Council; the building code contains only minimal fire safety regulations which provide inadequate protection to apartment dwellers; Type 6 construction does not contain fires and presents problems of fire spread and escape for occupants; the wooden siding and stairways

used in Type 6 construction can become engulfed in flames in a matter of minutes; the city fire chief was aware of other instances in which Type 6 escape routes were rendered impassable by flames and apartment dwellers were forced to jump from their windows or balconies; the fire chief recommended the installation of sprinkler systems, noncombustible stairs and two exit paths to make Type 6 apartment complexes safer; and a statistical study by the city fire department showed the benefits of residential sprinkler systems as an effective, cost-efficient means of protecting lives and property in apartment complexes.

5. **Landlord and Tenant § 8.3— spreading fire—tenant jumping from apartment—foreseeability**

Where affidavits and a statistical summary introduced by plaintiff indicated that the rapid spread of fire to engulf escape routes is a predictable danger in apartments of Type 6 construction, rational jurors could find that it was foreseeable that a resident trapped in a third floor apartment of Type 6 construction by the spreading of a fire would jump from the apartment.

6. **Landlord and Tenant § 8.4; Negligence § 54— fire in apartment complex—tenant jumping from third floor window—no contributory negligence as matter of law**

Plaintiff was not contributorily negligent as a matter of law in jumping from the window of her third floor apartment when she was confronted with a raging fire outside her apartment door although no smoke or flame had entered her apartment and ultimately the only damage to the apartment consisted of some burned molding inside the door.

ON plaintiff's petition for discretionary review of a decision of the Court of Appeals, 89 N.C. App. 656, 366 S.E. 2d 901 (1988), affirming in part and reversing in part summary judgment in favor of the defendants entered by *Burroughs, J.*, at the 27 April 1987 session of Superior Court, MECKLENBURG County. Heard in the Supreme Court 15 November 1988.

*Shelley Blum for plaintiff-appellant.*

*Smith Helms Mulliss & Moore, by Peter J. Covington and Scott P. Vaughn, for General Electric Real Estate Equities, Inc., defendant-appellee.*

*Golding, Crews & Meekins, by James P. Crews, for Walsh Properties, Inc., defendant-appellee.*

MARTIN, Justice.

During the early morning hours of 19 February 1984, a fire broke out in building 7709 at the Cedar Creek apartment complex

in southeastern Mecklenburg County. Plaintiff, a third-floor resi-
dent of building 7709, sustained serious personal injuries when
she jumped from her apartment window in an attempt to escape
the fire. Plaintiff filed this negligence action against General Elec-
tric Real Estate Equities, Inc. (G.E.), owner of the apartment com-
plex, Walsh Properties, Inc. (Walsh), manager of the complex, and
Sharon Kay Nelms, resident of the apartment in which the fire
originated. The sole question for review on appeal is whether the
trial court properly granted summary judgment in favor of de-
fendants G.E. and Walsh. We hold that summary judgment for
Walsh was proper and that summary judgment for G.E. was not.
Accordingly, for the reasons set forth below, the decision of the
Court of Appeals is affirmed in part and reversed in part.

The record reveals that the fire started in an electric blanket
used by defendant Nelms in her apartment, which was located
one floor below plaintiff's apartment on the opposite side of the
common passageway. Despite the efforts of Nelms and some
neighbors to contain the fire, the flames spread from the Nelms
apartment into the common passageway, up the stairs, and into
the upper-level passageway outside plaintiff's door. Plaintiff,
wakened by shouts and the sound of a whistle, looked out her
bedroom window and saw a crowd of people and the "reflection
from a fire." She ran down the hallway to the other end of her
apartment and opened the door leading into the passageway,
whereupon she was confronted by "sheets of flame." She then
closed the apartment door, retreated to the bedroom, and jumped
out the window. Plaintiff broke her back in several places and
shattered her wrist in the fall.

In her complaint plaintiff alleged that defendant Nelms was
negligent in her care and maintenance of the electric blanket and
in failing to wake plaintiff or to extinguish the fire when it was
small. The complaint also alleged that defendants G.E. and Walsh
were negligent in the design and construction of Cedar Creek in
the following respects: (a) constructing the apartment complex
using materials conducive to the rapid spread of fire, such as un-
treated wooden siding and cedar shakes; (b) constructing the
apartment buildings with a lengthy escape path made entirely of
untreated wood but without a sprinkler system; (c) constructing
the individual apartments with only one door and one escape
path; and (d) failing to install an alarm system to warn residents

before the escape path was engulfed in flames. The trial court granted summary judgment in favor of all three defendants. The Court of Appeals affirmed the order of summary judgment as to defendants G.E. and Walsh but reversed as to defendant Nelms. We granted plaintiff's petition for discretionary review. Because defendant Nelms did not file a brief with this Court, we address the summary judgment issue only with respect to defendants Walsh and G.E.

The North Carolina Rules of Civil Procedure provide that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). The party moving for summary judgment has the burden of establishing the lack of any triable issue. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379 (1975). The movant may meet this burden by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim. *Bernick v. Jurden*, 306 N.C. 435, 293 S.E. 2d 405 (1982); *Dickens v. Puryear*, 302 N.C. 437, 276 S.E. 2d 325 (1981). By making a motion for summary judgment, a defendant may force a plaintiff to produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial. *Dickens*, 302 N.C. 437, 276 S.E. 2d 325. All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion. *Page v. Sloan*, 281 N.C. 697, 190 S.E. 2d 189 (1972).

To establish actionable negligence at common law, a plaintiff must show the following: (1) that there has been a failure to exercise proper care in the performance of some legal duty which defendant owed to plaintiff under the circumstances in which they were placed; and (2) that such negligent breach of duty was a proximate cause of the injury. *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 311 S.E. 2d 559 (1984).

[1] At the outset we dispose summarily of the inquiry regarding defendant Walsh. The Court of Appeals held that summary judg-

ment for defendant Walsh was proper because Walsh, as manager of Cedar Creek, was not responsible for the alleged defects in the design and construction of the apartments. We agree that the pleadings, affidavits, and other materials of record fail to establish that Walsh owed plaintiff a legal duty with respect to the design and construction of the complex. We therefore affirm the Court of Appeals decision as it applies to Walsh and turn our attention to the remaining defendant, G.E.

[2] In this case, G.E. and the Court of Appeals relied on N.C.G.S. § 42-42, part of the Residential Rental Agreements Act, to determine the applicable standard of care. Section 42-42(a) provides that a landlord shall:

(1) Comply with the current applicable building and housing codes . . . to the extent required by the operation of such codes; . . .

(2) Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition;

(3) Keep all common areas of the premises in safe condition; and

(4) Maintain in good and safe working order and promptly repair all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances supplied or required to be supplied by him . . . .

In its brief G.E. argues that subsection (a)(1) is the only subsection pertinent to plaintiff's allegations of unsafe design and construction; therefore, it necessarily establishes the applicable standard of care. That standard, according to G.E., is compliance with state and local building and housing codes. G.E. points out that Cedar Creek's plans, specifications, materials, and construction conformed in all respects to the North Carolina State Building Code as well as to the codes and regulations of Mecklenburg County and the city of Charlotte. G.E. insists that plaintiff must demonstrate some violation of these codes, and thus of section 42-42(a)(1), in order to support her allegation that defendant breached the standard of care, an essential element of her claim.

In some instances, the standard of conduct required of a defendant in a particular situation is prescribed by legislative enact-

ment rather than by the principles of the common law. "The duty may arise specifically by mandate of statute, or it may arise generally by operation of law under application of the basic rule of the common law which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to endanger the person or property of others." *Pinnix v. Toomey*, 242 N.C. 358, 362, 87 S.E. 2d 893, 897 (1955). Where there is an allegation of the violation of a statute constituting negligence per se, the statute itself establishes the standard of care as to that allegation. However, this is not such a case. By providing that "[a] violation of this Article shall not constitute negligence per se," N.C.G.S. § 42-44(d), the legislature left intact established common-law standards. *Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 365 S.E. 2d 898 (1988); *Cowan v. Transfer Co.*, 262 N.C. 550, 138 S.E. 2d 228 (1964); *Bradley v. Wachovia Bank & Trust Co.*, 90 N.C. App. 581, 369 S.E. 2d 86 (1988); *Brooks v. Francis*, 57 N.C. App. 556, 291 S.E. 2d 889 (1982); *Lenz v. Ridgewood Associates*, 55 N.C. App. 115, 284 S.E. 2d 702 (1981), *cert. denied*, 305 N.C. 300, 290 S.E. 2d 702 (1982). The common-law standard of care is a generalized one of "due care" on the part of the defendant. The standard of due care is always the conduct of a reasonably prudent person under the circumstances. *Bolkhir*, 321 N.C. 706, 365 S.E. 2d 898.

Thus, the question is not simply whether defendant G.E. complied with applicable housing codes and regulations, or with the other requirements of N.C.G.S. § 42-42, but whether in a larger sense defendant, as owner of the apartments, exercised due care for the safety of Cedar Creek residents in the design and construction of the complex. "While compliance with a statutory standard is *evidence* of due care, it is not conclusive on the issue." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 30 (5th ed. 1984) [hereinafter Prosser & Keeton]. *See also* Restatement (Second) of Torts § 288C (1965). The purpose of the North Carolina Building Code, authorized by article 9, chapter 143 of the General Statutes, is to establish certain *minimum* standards as to materials, design, and construction of buildings "for the protection of the occupants of the building or structure, its neighbors, and members of the public at large." N.C.G.S. § 143-138(b) (1987); North Carolina State Building Code § 101.2 (1978). Because "[s]uch a standard is no

more than a minimum, [compliance] does not necessarily preclude a finding that the actor was negligent in failing to take additional precautions." *Prosser & Keeton* § 36. *See Mitchell v. Hotel Berry Co.*, 34 Ohio App. 259, 171 N.E. 39 (1929) (where plaintiff injured jumping from burning building, defendant hotel not acquitted of a charge of common-law negligence by proof of its compliance with statutes governing the number of exits required). We conclude that compliance with N.C.G.S. § 42-42 does not insulate landlords from liability for defects in building design or construction.

[3] Nor does uncontradicted evidence that defendant G.E. observed the standards customarily followed by the building industry and other complex owners in the area necessitate a finding absolving defendant of negligence liability as a matter of law. At oral argument defendant emphasized that the affidavits of the design architect, construction inspector, and construction manager of the Cedar Creek project established that the design and construction of the complex conformed with all industry-recognized standards for fire safety. Conformity with industry custom, contends defendant, meets a standard of conduct above and beyond mere statutory compliance. Defendant argues that it was entitled to summary judgment because plaintiff failed to rebut evidence that defendant discharged its duty of due care under the industry standard. This argument too must fail:

> [T]he better view . . . is that of the great majority of the cases, that every custom is not conclusive merely because it is a custom, that it must meet the challenge of "learned reason," and be given only the evidentiary weight which the situation deserves. It follows that where common knowledge and ordinary judgment will recognize unreasonable danger, what everyone does may be found to be negligent . . . .

*Prosser & Keeton* § 33.

[4] We find that plaintiff has raised a genuine issue of material fact as to whether G.E. breached its duty to exercise due care in failing to install additional fire safety features in the common areas of Cedar Creek apartment complex. In addition to her pleadings, plaintiff presented the affidavits of Chief Blackwelder and Inspector Anderson of the Charlotte Fire Department. Both affidavits noted that the Cedar Creek complex was built according to a "Type 6" construction plan, the quickest and cheapest

type allowed by the North Carolina Building Codes Council. Both acknowledged that the building code contains only minimal fire safety regulations which provide inadequate protection to apartment dwellers, and stated that "Type 6 construction does not contain fires, and presents a problem of fire spread and a serious problem of escape for occupants." Both observed that the wooden siding and stairways used in Type 6 construction can become engulfed in flames in "a matter of minutes." Chief Blackwelder further stated that the Charlotte Fire Department was aware of other instances in which Type 6 escape routes were rendered impassable by flames and apartment dwellers were forced to jump from their windows or balconies. He recommended the installation of sprinkler systems, noncombustible stairs, and two exit paths to make Type 6 apartment complexes safer. Inspector Anderson noted that the windows in Type 6 construction often drop out from the heat of a blaze, allowing a rapid spreading of the fire. He was familiar with an instance in which a local Type 6 building ignited so quickly and burned so rapidly that the roof collapsed a scant three minutes after the fire alarm sounded. These affidavits incorporated by reference a statistical study prepared by the Charlotte Fire Department extolling the benefits of residential sprinkler systems as an effective, relatively cost-efficient means of protecting lives and property in apartment complexes.

"Even where there is no dispute as to the essential facts, where reasonable people could differ with respect to whether a party acted with reasonable care, it ordinarily remains the province of the jury to apply the reasonable person standard." *Moore v. Crompton*, 306 N.C. 618, 624, 295 S.E. 2d 436, 441 (1982). The foregoing evidence, taken in the light most favorable to the plaintiff, would permit rational jurors applying the standard of a reasonable and prudent owner under the same or similar circumstances to reach differing conclusions as to whether defendant took appropriate fire safety precautions in the design and construction of Cedar Creek.

[5]   G.E. next contends that assuming plaintiff survives summary judgment on the issue of negligence, she has failed to bring forward evidence that her injuries were proximately caused by that negligence. The test of proximate cause is whether a person of ordinary prudence could have reasonably foreseen the actual results, or similar injurious results, from his negligent conduct. *Sut-*

*ton v. Duke,* 277 N.C. 94, 176 S.E. 2d 161 (1970). Proximate cause is ordinarily a question for the jury. *Conley v. Pearce-Young-Angel Co.,* 224 N.C. 211, 29 S.E. 2d 740 (1944). Here the affidavits and statistical summary introduced by plaintiff, when viewed in their most favorable light, indicated that the rapid spread of fire to engulf escape routes is a predictable danger in apartments of Type 6 construction. Rational jurors could find that the jumping of residents trapped in their apartments by the spreading of the fire was readily foreseeable.

[6] Finally, G.E. argues that it was entitled to summary judgment based on plaintiff's contributory negligence. Specifically, defendant points to plaintiff's admission in her deposition that only five minutes elapsed between the time she woke up and the time she jumped. Plaintiff further conceded that no smoke or flame had entered her apartment and that ultimately the only damage to the apartment consisted of some burned molding inside the door. It is defendant's contention that plaintiff behaved unreasonably by jumping when she could have summoned help and safely remained in her apartment until rescued, or indeed until the fire had been extinguished.

We have held that

the existence of contributory negligence does not depend on plaintiff's *subjective* appreciation of danger; rather, contributory negligence consists of conduct which fails to conform to an *objective* standard of behavior—"the care an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury."

*Smith v. Fiber Controls Corp.,* 300 N.C. 669, 673, 268 S.E. 2d 504, 507 (1980) (quoting *Clark v. Roberts,* 263 N.C. 336, 343, 139 S.E. 2d 593, 597 (1965) ).

Although some of the evidence tends to support defendant's claim of contributory negligence, this is by no means the only reasonable inference that may be drawn from the facts of the case. Plaintiff was confronted with a raging fire outside her apartment door, blocking her only route of escape. She testified in her deposition that after assessing this situation

I looked out the window and there was nobody around. And I felt like, you know, there would be nobody who would hear

me. Or there was nobody outside my window, or anything, you know, to—and I just felt that I needed to get out of that building.

. . . .

I did not scream for the fact that I just felt like nobody was going to hear me. I felt like, you know, those people I'd seen were so far away, and there was nobody around that part or anywhere near the part of the building where I lived.

We note that another third-floor resident also chose to jump from her apartment. We cannot say as a matter of law that plaintiff was contributorily negligent in failing to remain in her apartment until help arrived. We hold that it was for the jury to decide under the circumstances of this case whether plaintiff's actions were those of an ordinarily prudent person exercising reasonable care for her own safety. Because plaintiff has raised genuine issues of material fact as to each element of her negligence claim against defendant G.E., summary judgment in G.E.'s favor was improperly granted.

The decision of the Court of Appeals is affirmed as to defendant Walsh and reversed as to defendant G.E.

Affirmed in part, reversed in part.