VICKIE ROUSE, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR TRAVIS SENTEL ROUSE v. PITT COUNTY MEMORIAL HOSPITAL, INCORPORATED, LYNN G. BORCHERT, ROBERT G. BRAME, JARLATH MacKENNA, MICHAEL R. WATKINS, THOMAS J. BYRNE AND JOEL B. McCUAIG

No. 933SC256

(Filed 6 September 1994)

1. **Physicians, Surgeons, and Other Health Care Professionals § 96 (NCI4th)— attending physicians supervising residents—negligent supervision issue—summary judgment improper**

In an action by plaintiff to recover for negligent delivery of her child, the trial court erred in granting summary judgment for defendants on the issue of negligent supervision where the evidence tended to show that defendants, as attending physicians, had accepted the responsibility to supervise the resident physi-

cians and that, when they accepted such responsibility, both defendants were aware that the residents were actually treating patients; plaintiff presented sufficient evidence of a breach of the appropriate standard of care sufficient to overcome defendants' motion for summary judgment; and there was no evidence that defendants followed their allegedly usual routine of making rounds with the residents on the day plaintiff's child was born.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 286 et seq.**

2. **Physicians, Surgeons, and Other Health Care Professionals § 96 (NCI4th)— attending physicians—derivative liability—summary judgment on direct negligence issue proper**

In an action to recover for negligence in the delivery of plaintiff's child, the trial court properly entered summary judgment against plaintiff on the issue of direct negligence, since the only allegations of negligence concerned residents' failure to render adequate care and supported the position that defendants' only liability to plaintiff was derivative.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 286 et seq.**

3. **Physicians, Surgeons, and Other Health Care Professionals § 96 (NCI4th)— negligence by resident physicians—vicarious liability of attending physicians—summary judgment improper**

Plaintiff's forecast of evidence was sufficient to raise a genuine issue of material fact as to whether defendant attending physicians had the right to control resident physicians so as to be vicariously liable for the negligence of the resident physicians in the delivery of plaintiff's child where the evidence tended to show that the residents' salaries were paid by the hospital which hired them and could terminate their employment, but it also tended to show that residents were allowed to practice only under the supervision of the attending physicians and that the attending physicians were responsible for the patients' care.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 286 et seq.**

ROUSE v. PITT COUNTY MEMORIAL HOSPITAL

[116 N.C. App. 241 (1994)]

Appeal by plaintiff from orders signed by Judge Frank R. Brown in Pitt County Superior Court and filed 29 May 1990, 1 June 1990 and 9 November 1992 with the Pitt County Clerk of Court. Heard in the Court of Appeals 9 December 1993.

On 23 January 1989, plaintiff filed this action against defendants alleging that they had been negligent in the delivery of her first child, Travis Sentel Rouse. Defendants Borchert and MacKenna filed motions for summary judgment. The trial court granted summary judgment in Borchert's favor on 29 May 1990 and entered summary judgment in favor of MacKenna on 1 June 1990. Plaintiff appealed from these orders to this Court. In an unpublished opinion filed on 5 November 1991, a panel of this Court found that the appeal was premature because the judgments did not dispose of the entire case and no substantial right of the plaintiff would be prejudiced by delay.

On 22 April 1992, the North Carolina Supreme Court filed its opinion in *Mozingo v. Pitt County Memorial Hospital*, 331 N.C. 182, 415 S.E.2d 341 (1992), which dealt with the issue of negligent supervision of resident physicians by attending physicians. Based on the opinion in *Mozingo*, plaintiff filed a motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b) (1990) to revise the orders of summary judgment in favor of defendants MacKenna and Borchert. Following a hearing on 7 August 1992, Judge Brown entered an order denying plaintiff's Rule 54(b) motion on 9 November 1992. By 8 January 1993, all the remaining claims and parties had been resolved. On that day plaintiff gave notice of her appeal of the orders granting summary judgment in favor of MacKenna and Borchert and the order denying her Rule 54(b) motion.

*Law Offices of Grover C. McCain, Jr., by Grover C. McCain, Jr. and Kenneth B. Oettinger, for plaintiff-appellant.*

*Walker, Young & Barwick, by Robert D. Walker, Jr., for defendant-appellee Lynn G. Borchert.*

*Yates, McLamb & Weyher, by Joseph W. Yates, III and Suzanne S. Lever, for defendant-appellee Jarlath MacKenna.*

McCRODDEN, Judge.

In this appeal we consider whether summary judgment was properly granted in favor of physicians who were attending at the time plaintiff received allegedly negligent medical care from resident physicians.

A trial court properly enters summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Rule 56(c). The party moving for summary judgment bears the burden of establishing the lack of any triable issue. *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). By making a motion for summary judgment, a defendant may force a plaintiff to produce a forecast of evidence showing that the plaintiff will be able to make out at least a *prima facie* case at trial. *Id.* It is then incumbent upon the plaintiff to come forward with some specific evidence, not mere conclusory allegations, to support his claim. *Smock v. Brantley*, 76 N.C. App. 73, 77, 331 S.E.2d 714, 717 (1985), *disc. review denied*, 315 N.C. 590, 341 S.E.2d 30 (1986). The trial court must consider the record in the light most favorable to the non-movant and must draw all inferences of fact from the evidence presented at the hearing in his favor. *Dickens v. Puryear*, 302 N.C. 437, 453, 276 S.E.2d 325, 335 (1981).

Plaintiff assigns error to the entry of summary judgment in defendants' favor and the later denial of her Rule 54(b) motion and makes two arguments in support thereof. She argues that there were genuine issues of material fact as to whether the defendants were liable under the theories of (I) negligent supervision, (II) direct negligence, and (III) vicarious liability.

I.

[1] To recover for actionable negligence, a plaintiff must show that the defendant owed him a duty, that the defendant failed to exercise proper care in the performance of that duty and that the defendant's breach was a proximate cause of the plaintiff's injuries. *Hopkins v. Ciba-Geigy Corp.*, 111 N.C. App. 179, 186, 432 S.E.2d 142, 146 (1993). We find that the plaintiff's forecast of evidence was sufficient to demonstrate that she could make out a *prima facie* case of negligent supervision.

As supervising physicians, the defendants did owe a duty to plaintiff. In *Mozingo*, the plaintiff child brought an action against the defendant, who was the attending physician on call when the plaintiff was born, alleging that the resident physicians at the hospital had delivered him negligently and that the defendant had negligently failed to supervise the resident physicians. The trial court granted summary judgment in the defendant's favor, but, on appeal, the

Supreme Court reversed this judgment. The defendant argued that he owed no duty to the plaintiff and that his affidavits established that he did not breach the applicable standard of care for attending on-call physicians. The Court found that the defendant owed a duty to the plaintiff and that there was a genuine issue of material fact as to whether he breached the standard of care. The defendant had stipulated that he was responsible for the supervision of residents on the night in question and it was uncontested that he knew that those residents were treating patients when he undertook to supervise them. Based on these two points, the Court concluded that the doctor had a duty to his patients, including the plaintiff, to exercise reasonable care in supervising the residents. *Mozingo*, 331 N.C. at 188, 415 S.E.2d at 344-45.

In this case, it is uncontested that the defendants, as attending physicians, had accepted the responsibility to supervise the resident physicians, and that when they accepted such responsibility, both defendants were aware that the residents were actually treating patients. Following *Mozingo*, we find that defendants owed a duty to plaintiff to exercise reasonable care in supervising the residents.

We also find that the plaintiff in this case presented evidence of a breach of the appropriate standard of care sufficient to overcome defendants' motion for summary judgment. In *Mozingo*, the defendant presented the affidavits of the chairmen of three teaching hospitals in North Carolina, which stated that an on-call attending physician may take calls at home "unless a problem is specifically anticipated." *Id.* at 191, 415 S.E.2d at 346. The plaintiff's expert in that case averred that the defendant breached the standard of care of an on-call supervising physician, given the known condition of the plaintiff's mother. The expert stated that the defendant should have called in at the beginning of his shift and periodically thereafter to check on the condition of the patients. *Id.* at 186, 415 S.E.2d at 343. The plaintiff's forecast of evidence demonstrated the applicable standard of care and how the defendant breached it.

In support of their motions for summary judgment in the present case, defendants offered the affidavits of Dr. Watson A. Bowes and Dr. Joseph M. Ernest, III. Both affiants averred that they were familiar with the policies and methods of supervising resident physicians at the teaching hospitals in North Carolina at the time plaintiff gave birth. Both stated that the policies did not require that an attending physician personally examine each patient admitted while he was on

call and did not require that he review the medical charts of such patients. They further averred that on-call attending physicians were permitted to afford coverage by being present or, unless a problem were present or specifically anticipated, being available by telephone so that they could come to the hospital immediately upon request.

In opposition to the motion for summary judgment, plaintiff presented the affidavits of Dr. J. Patrick Lavery and Dr. Harold Schulman. Each of them asserted that the obstetrical management of the labor and delivery failed to comply with appropriate standards of practice. They also stated:

> [I]t was the obstetrical standard of care . . . to fully supervise and be responsible for the acts of residents working under their exclusive control and supervision. It is the duty of a fully trained attending physician (who is supervising resident physicians) to know the competency level of the training physicians they supervise. This duty to know the competency . . . is necessary and required in order to provide safe and adequate patient care. . . . [T]he labor and delivery records of Vickie Rouse demonstrate that the resident physicians caring for her were not able to give, and did not give, obstetrical care that complies with appropriate standards for obstetrical practice.

Both of plaintiff's affiants concluded that defendants "failed to adequately supervise their assistants, the resident physicians, who were managing the obstetrical care of their patient."

Dr. Robert Griffin Brame, who was also an attending physician at Pitt County Hospital at that time, stated in his deposition that he thought an attending physician should "tour" the wards with the residents to assure himself that the patients were receiving satisfactory care. Several residents and both of the defendants testified that each time one of the defendants was the attending on-call physician, he would make rounds with the residents, assure himself that things were under control, and address any problems there. However, there is no evidence that defendants actually toured the wards on the day plaintiff gave birth. The plaintiff's medical charts reveal no notations by either defendant that might indicate that they had seen her.

Despite the fact that defendants presented evidence of their usual practice, there is no evidence that they followed that routine on the day in question. There was evidence, however, that plaintiff's pregnancy presented something of a risk; she was obese, suffered from

chronic hypertension, and there was a history of diabetes within her family. Based upon these characteristics, Dr. Watkins, the resident physician, described plaintiff as a high risk patient. Taken in the light most favorable to the plaintiff, the evidence creates a genuine issue of material fact as to whether defendants breached their duty to exercise reasonable care in the supervision of the resident physicians. Hence, we find that the trial court erred in granting summary judgment on the issue of negligent supervision.

## II.

[2] Secondly, plaintiff argues that the trial court improperly entered summary judgment on her claim of direct negligence. We disagree.

"Medical professionals may be held accountable *when they undertake to care for a patient* and their actions do not meet the standard of care for such actions as established by expert testimony." *Mozingo*, 331 N.C. at 189, 415 S.E.2d at 345 (emphasis added). Plaintiff alleged in her complaint that her physicians breached their duties of care to plaintiff by, among other things, failing to monitor her labor and failing to recognize that her son was in fetal distress. Plaintiff's experts described the failures of the physicians with specific evidence. However, plaintiff has failed to bring forward any evidence to show that the defendants owed her any direct duty of care. Simply put, plaintiff has failed to show that the named defendants in this action were her physicians. All the evidence tends to show that the defendant MacKenna never directly participated in plaintiff's care, and that defendant Borchert's only involvement was to attend the Caesarean section. Although plaintiff alleges that she "was admitted to the service of Dr. MacKenna," the evidence reflects only that MacKenna was the "attending physician," a term the record defines only by reference to supervisory duties.

We conclude that the allegations of negligence concern the *residents'* failure to render adequate care and support the position that defendants' only liability to plaintiff is derivative. The trial court properly entered summary judgment against plaintiff on the issue of direct negligence.

## III.

[3] Finally, plaintiff argues that the trial court erred in granting summary judgment because there was a genuine issue of material fact as to whether the defendants were vicariously liable for the actions of the residents. We agree.

ROUSE v. PITT COUNTY MEMORIAL HOSPITAL

[116 N.C. App. 241 (1994)]

It is uncontested that the resident physicians were not employees of the defendants. The defendants could only be held vicariously liable for the residents' actions under the borrowed servant doctrine: "One who borrows another's employee may be considered a temporary master liable in *respondeat superior* for the borrowed employee's negligent acts" if he acquires the same right of control over the employee as possessed by the lending employer. *Harris v. Miller*, 335 N.C. 379, 387, 438 S.E.2d 731, 735 (1994). Thus, the defendants' liability depends upon whether they had the right to control the manner of the residents' performance of their duties. *Id.*

Plaintiff points to the Affiliation Agreement between the Hospital and the East Carolina School of Medicine, the bylaws of the Hospital's medical staff, the testimony of defendant Borchert, and the affidavits of her experts to demonstrate the defendants' right of control over the residents.

The Affiliation Agreement provides that "house staff shall be responsibly involved in patient care under the supervision of the Dean and the faculty of the School of Medicine." The bylaws provide that house staff officers, *i.e.* the residents, "will only practice under the direction of the department chairman or his delegate." At his deposition, Dr. Borchert gave a description of his understanding of supervision of resident physicians:

> Supervision can vary depending upon again the extended training of the residents. At times, I think supervision can be actually doing a task in the form of teaching. That's also supervision. I think supervision could be holding someone's hand while they do something. I think supervision could be observing them while they do something and commenting about their performance. I think supervision could say please don't do that; let me do that. I think supervision could be a combination of all these things, but basically I think supervision involves being able to respond when called on to help. Supervision involves being certain that the patient is being cared for well.

In their affidavits, plaintiff's experts averred that the resident physicians worked "under the supervision of, and at the pleasure of, the attending physician who is responsible for the medical care delivered to the patient."

In *Smock v. Brantley*, this Court found that a resident physician who was at the hospital on a two-month rotation from medical school

ROUSE v. PITT COUNTY MEMORIAL HOSPITAL

[116 N.C. App. 241 (1994)]

was not an agent of the hospital and thus the hospital could not be liable under *respondeat superior* for his actions. In that case, the Court relied heavily on the facts that the resident was not paid a salary by the Hospital; that the resident was exclusively supervised by attending physicians; that neither the hospital nor its staff had any control over his actions and seemed to have no regulations regarding the supervision of residents; and that the hospital had no control over which residents were assigned to it. *Smock,* 76 N.C. App. at 76, 331 S.E.2d at 717.

The *Smock* Court distinguished the case of *Waynick v. Reardon,* 236 N.C. 116, 72 S.E.2d 4 (1952), in which the defendant resident physician was found to be an agent of the hospital. In that case, the hospital paid the resident's salary, gave him accommodations, and, through its surgical staff, supervised his practice.

After considering the evidence of the factors the *Smock* Court found important, we believe that the plaintiff's forecast of evidence is sufficient to raise a genuine issue of material fact as to whether the defendants had the right to control the resident physicians. The evidence shows that the residents' salaries were paid by the hospital which hired them and could terminate their employment. However, it also tends to show that residents were allowed to practice only under the supervision of the attending physicians, and the attending physicians were responsible for the patients' care.

Based on the foregoing, we hold that the trial court improperly entered summary judgment for defendants on the claims of negligent supervision and *respondeat superior.* We reverse the order of summary judgment entered in favor of defendants Borchert and MacKenna.

Reversed.

Judges JOHNSON and MARTIN concur.