ROSE BENNETT, Plaintiff-Appellant
v.
MERCHANDISE MART PROPERTIES, INC. and SUPREME MAINTENANCE ORGANIZATION, INC., Defendants-Appellees
No. COA08-784
Court of Appeals of North Carolina.
Filed June 16, 2009
This case not for publication
Manger Law Firm, by Richard A. Manger, for plaintiff-appellant.
Pinto, Coates, Kyre & Brown, PLLC, by Kenneth Kyre, Jr., for defendant-appellee Supreme Maintenance Organization, Inc.
Ragsdale Liggett, PLLC, by John M. Nunnally and Carrie Barbee, for defendant-appellee Merchandise Mart Properties, Inc.
CALABRIA, Judge.
Rose Bennett ("plaintiff") appeals the trial court's order granting summary judgment to Merchandise Mart Properties, Inc., ("MM") and Supreme Maintenance Organization, Inc., ("SMO") (collectively "defendants") and dismissing with prejudice plaintiff's action to recover for injuries sustained when, as a sales representative, she attended a sales exhibition on defendant MM's premises, and slipped and fell. We affirm.

I. Factual and Procedural Background
On 21 May 2007, plaintiff filed a complaint in Guilford County Superior Court alleging defendants' negligence caused plaintiff's injuries based on failure to maintain the Suites at Market Square ("Market Square") premises in a reasonably safe condition, failure to warn, failure to enforce safety procedures relating to floor maintenance, and failure to take steps that a reasonable and prudent person would take to prevent injury to visitors entering from the rainy outdoors. On 1 November 2007, defendants filed separate motions for summary judgment with supporting discovery.
On 12 February 2008, the trial court entered an order that granted both defendants' motions for summary judgment on the issue of their negligence, and dismissed plaintiff's action with prejudice. The trial court ruled that there was no genuine issue of material fact whether plaintiff's fall was caused by a condition created or maintained by defendants, based on the fact that neither plaintiff nor any other witness presented evidence that plaintiff fell as a result of stepping on or in water or a wet condition caused or maintained by defendants; or whether defendants failed to exercise due care to warn plaintiff of latent conditions. Plaintiff appealed.
On 27 April 2006, between 8:00 a. m. and 9:00 a. m., while it was raining, plaintiff entered MM's building known as the Suites at Market Square ("Market Square"). During her deposition, plaintiff states regarding the rain as follows:
Q When you got into the vehicle that Cindy was going to drive you to the Market Square building, was it raining on April 27, 2006?
A Yes, it was.
Q Could you describe about the intensity of the rain, that is, was it raining soft, hard, was it torrential, was it sprinkle, any kind of words you want to use to convey to us how much it was raining?
A It was raining not drizzle, but more than that. It wasn't torrential, but it was raining enough.
According to plaintiff, it was not "that busy" in the hall; there were people present, but it was not "jammed yet." Plaintiff was unsure whether there was any water on the highly-polished hardwood floor. By contract, SMO provided janitorial services and maintained the common areas of Market Square for MM. Plaintiff's Materials in Response to Defendants' Motions for Summary Judgment included the affidavit of Eunice Maldonado, a temporary employee of MM, who stated that, prior to plaintiff's fall, an SMO employee had placed a wet floor warning sign near the entrance, and in an effort to keep the floor dry, had dry-mopped the floor.
Upon entering the building, plaintiff was wearing flat shoes with rubber treaded soles in good condition, which she wiped three to four times on a permanent mat. Plaintiff was looking straight ahead as she walked. She did not see anyone mopping the floor, nor did she see a sign. Plaintiff was pulling behind her a small valise on wheels which contained all of her belongings, including her umbrella. Plaintiff was not walking more cautiously than she had on prior occasions when she had entered the building. After walking off the mat, she then walked a few steps and, and as she slipped, she let go of the valise which she was holding with herright hand, put her right hand forward to break her fall, and fell. Immediately prior to and after her fall, plaintiff did not see water or anything else on the floor that could account for why she slipped and fell. After her fall, she did not believe that her clothing was wet and it was not stained. As a result of her fall, plaintiff was diagnosed with distal radius and scaphoid fractures to her right arm and wrist. She later stated, however, that she did not break her right arm.
Plaintiff's sole issue on appeal is that the trial court erred in granting defendants' motions for summary judgment because there were genuine issues of material fact and defendants were not entitled to judgment as a matter of law. We disagree.

II. Standard of Review for Summary Judgment
Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, N.C.R. Civ. P. 56 (c)(2008). In Collingwood v. G. E. Real Estate Equities, 324 N.C. 63, 66, 376 S.E.2d 425, 426 (1989), the North Carolina Supreme Court stated as follows:
The party moving for summary judgment has the burden of establishing the lack of any triable issue. The movant may meet this burden by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim. By making a motion for summary judgment, a defendant may force a plaintiff to produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial. All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion.
(Internal citations omitted).
In making the forecast of evidence in response to a motion for summary judgment, "...an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." N.C. Gen. Stat. § 1A-1, N.C.R. Civ. P. 56 (e) (2008).

III. Common Law Negligence
The North Carolina Supreme Court eliminated the distinction between licensees and invitees by requiring a standard of reasonable care under the circumstances toward all lawful visitors. Nelson v. Freeland, 349 N.C. 615, 631, 507 S.E.2d 882, 892 (1998). More recently, the North Carolina Supreme Court in Martishius v. Carolco Studios, Inc., 355 N.C. 465, 473, 562 S.E.2d 887, 892 (2002) set forth the elements of a common law negligence action, as follows: To prevail in a common law negligence action, a plaintiff must establish that the defendant owed the plaintiff a legal duty, that the defendant breached that duty, and that the plaintiff's injury was proximately caused by the breach. Actionable negligence occurs when a defendant owing a duty fails to exercise the degree of care that a reasonable and prudent person would exercise under similar conditions, or where such a defendant of ordinary prudence would have foreseen that plaintiff's injury was probable under the circumstances.
(Internal citations omitted).

IV. Duty to Warn
Plaintiff argues that the floor had a thin film of moisture that was not open and obvious, and that, therefore, defendants are liable for negligence in failing to warn. This argument fails since plaintiff had notice of the rain as the open and obvious condition; therefore, defendants had no duty to warn plaintiff of any alleged thin film of moisture on the floor and were not negligent on a theory of failure to warn. Moreover, in the statement of facts in plaintiff's brief, she cites to the deposition of Duryea Taylor, Assistant Manager of SMO, and states that defendants had dry-mopped the floor and decided to put out floor warning signs. In her brief, plaintiff cites to several pages of the Taylor deposition in support of her statement of facts. The deposition transcript at those pages included the following statements by Taylor:
Q. All right. Now, once you got to the lobby, can you tell me what you did?
A. When he told me that it was raining a lot, I made a decision that we needed to get dry mops on the floor. We needed  we put "Wet Floor" signs up, and I immediately made a phone call to Paul Sperano.
***
Q. Okay. Okay. You mentioned that signs were placed in the lobby area; is that correct?
A. That is correct.
Q. Who placed the signs? Do you recall?
A. Yes, I placed one out front  outside the door. I think Luis placed one inside the door, and then we placed one on the other escalator, so we had three signs up.
Q. Okay. All right. And, as far as the dry mops, do you remember who supplied the dry mops?
A. They're supplied by SMO, yeah. Q. Okay. And how many people were using the dry mops to mop up puddles on the floor?
A. We had Alicia. Is that her name?
Q. It's okay. Yeah, Alicia.
A. Yeah, Alicia was dry mopping. We also had terry cloth towels, which I was using and so was Luis.
Q. Now, when did Alicia start dry mopping the floor?
A. She started at 8:00  8:00 o'clock. She started at 8 o'clock then.
Q. All right. And when did Luis and you begin using terry-cloth towels to mop up
A. Around 8:15, 8:20, when he called me. I said, "Let's get some more  get some towels up there and start dry mopping that floor."
Q. All right. Now, did Alicia focus on any particular area of the lobby when she was dry mopping the floor?
A. Yes, she did.
Q. What area?
A. She focused pretty much on the front entrance door to the escalators going up, which, to me, I thought was the most high-profile area, because that's where all the traffic was coming through. So we had her dry mopping that area, along with Luis on his knees and myself getting those water spots as fast as we could get it up.
***
When plaintiff fell, Taylor was notified by telephone, and Taylor went immediately to the lobby. During Taylor's deposition, he was asked whether he noticed anything about the floor at the time of her fall. The following exchange occurred:
Q. Okay. Did you notice anything about the condition of the floor?
A. Yeah. I still had the person out there dry mopping. We still had the "Wet Floor" signs up.
In James v. Wal-mart Stores, Inc., 354 N.C. 210, 552 S.E.2d 140 (2001), the North Carolina Supreme Court set forth the standard for a jury instruction in a negligence claim against a premises owner by adopting the dissent in this Court's opinion, which stated that the defendant owner owes the plaintiff a duty of reasonable care and a duty to warn of any hidden or concealed dangerous condition about which the owner knows or, in the exercise of ordinary care, should have known. However, the owner does not have a duty to warn of any apparent hazards or circumstances of which the plaintiff has equal or superior knowledge. The dissent adopted by the North Carolina Supreme Court further stated as follows:
The evidence in the case at bar is uncontested that the condition, which led to plaintiff's fall was not concealed or hidden, that plaintiff had full knowledge rain was falling, that defendant had put out at least one warning sign, that plaintiff heeded the warning sign by wiping her feet several times, and that defendant took steps to remove moisture from the floor where plaintiff fell. Even if the floor was wet due to the rain that evening, this condition would have been an obvious danger of which plaintiff should have been aware since she knew it was raining outside and it was likely that people would track water in on their shoes.
James v. Wal-Mart Stores, 141 N.C. App. 721, 724, 543 S.E.2d 158, 160 (2000) (Internal citations and quotations omitted).
In James, due to the rain, the defendant had placed a yellow caution sign and a floor mat in the vestibule and another floor mat inside the entrance to the store. After walking into the store, wiping her feet on the mat, and taking two steps off the mat, the plaintiff fell. The plaintiff felt her pants were wet, and decided the moisture was water. The plaintiff never saw any water or other substance on the floor where she fell. Id. at 722, 543 S.E.2d at 158. In James, by reversing the Court of Appeals ruling, the Supreme Court of North Carolina in effect reaffirmed the holding in Byrd v. Arrowood, 118 N.C. App. 418, 421-22, 455 S.E.2d 672, 674 (1995) that, due to rainy conditions, the plaintiff should have been aware of the open and obvious danger that people would track water into the premises; and, therefore, the defendant was not liable on a theory of negligence due to failure to warn.
In Byrd, the Court found the plaintiff had equal knowledge of the obvious danger, as follows:
Even if the floor was wet due to the rain that evening, this condition would have been an obvious danger of which plaintiff should have been aware since she knew it was raining outside and it was likely that people would track water in on their shoes. [. . .] Since plaintiff [and defendant] had equal knowledge of this obvious danger, and since plaintiff has not shown that the [defendant] had actual or constructive notice that this spot was wet, the [defendant] had no duty to warn plaintiff of this potential peril.
Id. at 421-22, 455 S.E.2d at 674.
Plaintiff attempts to distinguish the instant case from James and Byrd by arguing in her brief that dry-mopping the floor created a thin, less visible film of moisture on the floor, and that, thus, the condition was not open and obvious as a matter of law. Plaintiff relies on Nelson v. Novant Health Triad Region, where the Court considered the plaintiff's allegations she had slipped on a wet floor. The Court distinguished a case in which the plaintiff had slipped on gray clay, and stated that "a film of water on a shiny linoleum floor is much less obvious and more difficult to see than gray clay." The Court then denied summary judgment on the grounds that "[s]ummary judgment is only appropriate based upon an `open and obvious' condition..." 159 N.C. App. 440, 444, 583 S.E.2d 415, 418 (2003). The facts in Nelson, however, are distinguishable from the facts in the case at bar. In Nelson, the water on the floor originated in a dishwashing room and flowed into an radjacent hospital hallway, and, thus, the plaintiff did not have notice of an open and obvious condition such as rain. Id. By contrast, in the instant case, plaintiff had notice of the rain outside the entrance to the building as an open and obvious condition.

V. Proximate Cause
Defendants argue that in a "slip and fall" case in North Carolina the plaintiff is required to present evidence explaining what caused her to fall, and plaintiff failed to forecast this evidence of proximate cause. We agree. Plaintiff did not state in her deposition testimony the cause of her fall. Nor did any of plaintiff's other forecasted evidence show the cause of her fall. Thus, plaintiff failed to forecast evidence of proximate cause, an essential element of her claim for negligence, and defendants are entitled to judgment as a matter of law.
In Byrd, the plaintiff knew it was raining yet did not state that the floor was wet and "did not notice water on the floor after she fell." 118 N.C. App. 418, 421, 455 S.E.2d 672, 674 (1995). Plaintiff admitted "she was not looking at the floor at the time of her fall and does not know what caused her to fall." Id. at 422, 455 S.E.2d at 675. The Court affirmed summary judgment for the defendant and observed that "plaintiff's failure to show what actions, if any, of defendant caused her fall also defeats the proximate cause element. . . ." Id. at 423, 455 S.E.2d at 675. See also Jacobson v. J.C. Penney Co., 40 N.C. App. 551, 554-55, 253 S.E.2d 293, 296 (1979) (summary judgment in favor of the defendant affirmed where after she fell, the plaintiff did not observe any substance on the floor except for a few drops of water which had fallen off the plaintiff's raincoat); and Gaskill v. Great Atlantic and Pacific Tea Company, Inc., 6 N.C. App. 690, 696, 171 S.E.2d 95, 98 (the plaintiff fell in a big puddle of water which she had not seen upon entering the store, but did not prove that the condition of the defendant's floor caused her to fall; judgment of nonsuit affirmed).
In the instant case, plaintiff presents statements by three witnesses to prove the proximate cause of her fall. The first witness, a temporary employee of MM, Eunice Maldonado, stated by affidavit that people tracked water from their shoes into the building and that water was dripping from their umbrellas and raincoats. This evidence does not show the cause of plaintiff's fall, only the condition of the entranceway. The second witness, Michael Browning, a co-worker who walked into the building behind plaintiff, stated by affidavit that when he helped plaintiff after she fell, he noticed the floor where she fell was damp and slick on the surface. However, this witness did not see the plaintiff fall, and did not state the cause of plaintiff's fall. The third witness, an off-duty police officer, R. J. Ward, stated in his report that the plaintiff "slipped on the wet floor and fell;" yet the officer did not have personal knowledge because he did not witness the plaintiff's fall. None of plaintiff's forecasted evidence shows that defendants' negligence proximately caused her fall, and defendants are entitled to judgment as a matter of law.
The decision of the trial court granting summary judgment for defendants and dismissing plaintiff's complaint with prejudice is affirmed.
Affirmed.
Judges ELMORE and STROUD concur.
Report per Rule 30(e).