DAVID R. HOPKINS, JR., AND JEFFERSON TODD HOPKINS, D/B/A D. R. HOPKINS, JR. AND SONS, FARMS v. CIBA-GEIGY CORPORATION; ELANCO PRODUCTS COMPANY, A DIVISION OF ELI LILLY AND COMPANY; THE DOW CHEMICAL COMPANY; AND DOW ELANCO & COMPANY

No. 9218SC321

(Filed 20 July 1993)

**1. Rules of Civil Procedure § 41 (NCI3d)— two-dismissal rule— voluntary dismissal of second party—not an adjudication on the merits**

Plaintiffs' voluntary dismissal of their claim against defendant Ciba-Geigy did not constitute an adjudication on the

merits pursuant to N.C.G.S. § 1A-1, Rule 41(a)(1) where plaintiffs filed their initial action against Lebanon on Chemical Corporation and Ciba-Geigy and plaintiffs filed a first notice of voluntary dismissal as to Lebanon Chemical and a second as to Ciba-Geigy. The two-dismissal rule applies only when the plaintiff has twice dismissed an action based on or including the same claim; here, plaintiffs dismissed their *action* only once.

Am Jur 2d, Dismissal, Discontinuance, and Nonsuit §§ 73 et seq.

2. Products Liability § 35 (NCI4th) — herbicide labels — warnings — federal preemption

The trial court did not err by granting summary judgment for defendants in an action arising from the loss of a crop where plaintiffs alleged that defendants negligently failed to warn plaintiffs about the carryover effect of prior chemical use. State common-law tort claims based on inadequate labeling are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act if the label complies with FIFRA.

Am Jur 2d, Products Liability §§ 292, 347, 350, 771, 772.

3. Products Liability § 35 (NCI4th) — herbicide use — knowledge of prior chemical use — summary judgment for defendant proper

Summary judgment was properly entered for defendant Ciba-Geigy in an action arising from a crop failure where plaintiffs claimed that Ciba-Geigy knew or should have known that plaintiffs had used a different chemical the prior year and that applying the chemical used the next year could result in crop damage where plaintiff Jeff Hopkins admitted that he did not recall discussing with Ciba-Geigy's representative the use of the different chemical the previous year.

Am Jur 2d, Products Liability §§ 292, 347, 350, 771, 772.

4. Products Liability § 35 (NCI4th) — herbicide use — prior use of other products — no duty to inquire or perform soil tests

Summary judgment was properly granted for defendant Ciba-Geigy in an action arising from a crop failure because Ciba-Geigy did not owe plaintiffs a duty to inquire about chemicals that had been applied to the soil previously or to conduct soil tests themselves or advise plaintiffs to do so.

Am Jur 2d, Products Liability §§ 292, 347, 350, 771, 772.

**HOPKINS v. CIBA-GEIGY CORP.**

[111 N.C. App. 179 (1993)]

Appeal by plaintiffs from orders entered 21 November 1991 by Judge Peter M. McHugh in Guilford County Superior Court. Heard in the Court of Appeals 8 March 1993.

Defendant Ciba-Geigy Corporation filed a motion to dismiss, motion for summary judgment, and motion for partial summary judgment. Defendants Elanco Products Company, Eli Lilly and Company, the Dow Chemical Company, and DowElanco & Company (the Elanco defendants) also filed a motion for summary judgment. The trial court granted defendant Ciba-Geigy's motion for summary judgment and the Elanco defendants' motion for summary judgment and dismissed the action with prejudice. From these orders, plaintiffs appeal.

*Max D. Ballinger for plaintiff appellants.*

*Adams Kleemeier Hagan Hannah & Fouts, by Larry I. Moore, III and Edward L. Bleynat, Jr., for defendant appellees Elanco Products Co., a division of Eli Lilly and Company; Eli Lilly and Company; The Dow Chemical Company; and DowElanco & Company.*

*Smith Helms Mulliss & Moore, by Jon Berkelhammer, for defendant appellee Ciba-Geigy.*

ARNOLD, Chief Judge.

[1] We first address whether or not plaintiffs' second voluntary dismissal constituted an adjudication on the merits pursuant to N.C.R. Civ. P. 41(a)(1), thus barring plaintiffs from bringing this action.

Rule 41(a)(1) provides in pertinent part:

(a) *Voluntary dismissal; effect thereof.—*

(1) By Plaintiff; by Stipulation.—Subject to the provisions of Rule 23(c) and of any statute of this State, an action or any claim therein may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before the plaintiff rests his case, or; (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of

this or any other state or of the United States, an *action* based on or including the same claim.

(Emphasis added.) The provision in Rule 41(a)(1) equating a second voluntary dismissal with an adjudication on the merits is known as the "two-dismissal rule."

Plaintiffs filed their initial action against Lebanon Chemical Corporation and Ciba-Geigy. Subsequently, plaintiffs filed two notices of voluntary dismissal pursuant to Rule 41(a)(1)(i), the first as to defendant Lebanon Chemical and the second as to Ciba-Geigy. At that point, plaintiffs had dismissed their entire first action. The two-dismissal rule, however, applies only when the plaintiff has twice dismissed *an action* based on or including the same claim. *Id.* Here, plaintiffs dismissed their first *action* only once. Accordingly, the two-dismissal rule does not apply in this case. Consequently, plaintiffs' voluntary dismissal of their claim against defendant Ciba-Geigy did not constitute an adjudication on the merits pursuant to Rule 41(a)(1) and plaintiffs were not barred from bringing this action.

[2]    The next question is whether or not summary judgment for defendants was proper. Plaintiffs concede that the trial court correctly concluded that there was no genuine issue of material fact, but argue that "the undisputed nature of the facts supported recovery by the plaintiffs rather than summary judgment in favor of the defendants."

Plaintiff Jeff Hopkins (Hopkins) stated in his affidavit, and testified at his deposition, as follows: In 1986, Hopkins planted soybeans on his ninety acres of farming fields. He applied TREFLAN, an herbicide manufactured and sold by the Elanco defendants, at a rate of one quart per acre. Plaintiffs had used TREFLAN for several years. They felt as though they knew how to use TREFLAN. They applied it in a manner prescribed by the directions that accompanied the product. Based upon Hopkins' understanding of the instructions on the TREFLAN label, if he applied TREFLAN at the rate of one quart per acre in 1986, he could safely plant sorghum (milo) the following year. He was unaware that there was any possibility of crop damage from TREFLAN so long as it was used at the manufacturer's suggested rates.

Rick Wall, a Lebanon Chemical Company representative, contacted Hopkins in March of 1987 about purchasing BICEP (R) 6L

## HOPKINS v. CIBA-GEIGY CORP.

[111 N.C. App. 179 (1993)]

(BICEP), an herbicide manufactured by Ciba-Geigy. Wall told Hopkins that BICEP was simply a combination of Atrazine and Dual, an herbicide that Hopkins had used in previous years. Hopkins also talked with Charles Flippin, a Ciba-Geigy representative. Both Flippin and Wall told Hopkins that BICEP was economical and could be used on corn and milo. Based upon those representations, Hopkins ordered a tank of BICEP from Wall. Hopkins had never used the product before that time. He would not have ordered the product if Flippin and Wall had not told him that he could use it on milo. Hopkins did not recall discussing with Flippin that he had used TREFLAN on the fields the previous year.

When Hopkins picked up the tank of BICEP, Flippin showed him how to operate the pump on the tank. Flippin and Wall assured Hopkins that BICEP was safe to use on the fields if he planted "safened" milo seed. Accordingly, Hopkins ordered the "safened" milo seeds from Wall. Neither representative informed Hopkins that he needed to have his soil tested for chemical residues before he used BICEP on his land and planted milo. Because Hopkins purchased the BICEP in bulk, Ciba-Geigy and Lebanon gave him the tank and pump. There was a multi-page BICEP label in a plastic wrapper attached to the tank. Hopkins stated in his affidavit that "[t]he only way to ever read the label was to rip it from the tank, and tear the sealed plastic wrapper open. I do not make it a practice to nor have I ever ripped off and torn into a label affixed to a product before I bought it."

In early June of 1987, Hopkins planted the "safened" milo seed and applied BICEP on the fields. On or about 4 July 1987, Hopkins observed massive damage and stuntage to his fields. Ciba-Geigy representatives visited the fields and Dow Elanco Company conducted soil tests which showed "some TREFLAN carryover."

Hopkins believed that BICEP was the sole or a contributing factor to his crop damage because on fields at another farm: (1) he used TREFLAN at the rate of one quart per acre in 1986; (2) he planted milo in 1987 and used Atrazine herbicide instead of BICEP; and (3) he had a good crop of milo. He also believed that if TREFLAN carryover had been the sole cause of his crop damage, the greatest damage would have been "in the low areas of the fields where the water ran following rains" but that was not the case here.

HOPKINS v. CIBA-GEIGY CORP.

[111 N.C. App. 179 (1993)]

Plaintiffs alleged the following in their complaint: Ciba-Geigy knew or should have known that plaintiffs "had applied TREFLAN in 1986 and that applying BICEP (R) 6L the following year could or would result in crop damage." Ciba-Geigy, therefore, should have informed plaintiffs of this danger. Ciba-Geigy, acting through its agent Charles Flippin, was negligent in failing to: (1) inquire about chemicals that had previously been applied to the soil; and (2) warn plaintiffs about the "carryover effect" of chemicals that, when combined with BICEP, could cause crop damage; (3) warn plaintiffs that the "safened" seeds were potentially ineffective against TREFLAN; and (4) conduct soil tests themselves or advise plaintiffs to do so in order to determine if BICEP was safe to use. If plaintiffs' crop damage was not solely caused by Ciba-Geigy's negligence, the TREFLAN "carryover residue" alone or in combination with BICEP caused the damage. The Elanco defendants negligently failed to: (1) warn plaintiffs that "TREFLAN could carryover in the soil to the following year and cause crop damage either alone, or in combination with other later applied herbicides"; and (2) warn plaintiffs to conduct soil tests after using TREFLAN to determine whether the carryover could cause crop damage.

Plaintiffs claim that the warnings on defendants' herbicide labels were inadequate. Defendants contend that the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136 to 136y preempts state regulation of pesticide labeling and packing. We agree with defendants' contention.

7 U.S.C. § 136v provides that, although a State is granted the authority to regulate the "sale or use" of pesticides, "such State shall not impose or continue in effect any requirements for labeling and packaging in addition to or different from those required pursuant to this Act." The legislative history of FIFRA demonstrates a Congressional intent to preempt state regulation of pesticide labeling and packaging. The Senate Agriculture Committee Report stated FIFRA "preempts any State or local government labeling or packaging requirements differing from such requirements under the Act." Reprinted in 1972 U.S. Code. Cong. and Ad. News 3993, 4021. The Agriculture Committee stated the intent of the provision was to allow state and local governments to impose stricter regulations on pesticide use than required under the Act. However different state packaging or labeling requirements are prohibited. Id.

## HOPKINS v. CIBA-GEIGY CORP.

[111 N.C. App. 179 (1993)]

Preemption is not limited to conflicts between state and federal statutes; federal regulatory schemes may preempt state common-law tort claims as well. *See, e.g., San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 3 L.E.2d 775 (1959). Accordingly, state common-law tort claims based on inadequate labeling are preempted by FIFRA if the label complies with FIFRA. *See, e.g., Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, 981 F.2d 1177 (10th Cir. 1993) "To the extent that state tort claims . . . require a showing that defendants' labeling and packaging should have included additional, different, or alternatively stated warnings from those required under FIFRA, they would be expressly pre-empted." *Id.* at 1179. In *Worm v. American Cyanamid Co.*, 970 F.2d 1301, 1308-09 (4th Cir. 1992), the United States Court of Appeals for the Fourth Circuit held that FIFRA

> manifestly ordains the preemption of the establishment or en-forcement of any common law duty that would impose a label-ing requirement inconsistent with those established by FIFRA . . . or the EPA in its regulations. . . . If to avoid breaching a state duty a pesticide producer is required to revise its pesticide labeling, then the duty, common law or otherwise, is preempted by § 136v(b).

We are persuaded by the analysis in these cases and therefore hold that FIFRA preempts state common-law tort claims based on inadequate labeling where such labeling is in compliance with FIFRA. Therefore, plaintiffs' action alleging inadequate warnings about the dangers of defendants' herbicides cannot be maintained if the warnings on defendants' labels complied with FIFRA. Plain-tiffs do not contend that the warnings on defendants' labels failed to comply with FIFRA. In fact, the Elanco defendants presented. uncontradicted evidence that their labels complied with FIFRA. Accordingly, plaintiffs' claims that Ciba-Geigy negligently failed to warn plaintiffs about "carryover effect" and the potential ineffec-tiveness of "safened seeds" and that the Elanco defendants negligent-ly failed to warn plaintiffs (1) about "carryover effect" and (2) to conduct soil tests after using TREFLAN to determine whether the carryover could cause crop damage are preempted by FIFRA.

[3] Plaintiffs' next claim is that Ciba-Geigy knew or should have known that plaintiffs "had applied TREFLAN in 1986 and that applying BICEP (R) 6L the following year could or would result in crop damage," and therefore, Ciba-Geigy should have informed

IN RE McCOLLOUGH v. N.C. STATE BD. OF DENTAL EXAMINERS

[111 N.C. App. 186 (1993)]

plaintiffs of this danger. Plaintiff Jeff Hopkins admitted that he did not recall discussing with Flippin, Ciba-Geigy's representative, the fact that he had used TREFLAN on the fields the previous year. Based on this admission, plaintiffs' claim is rejected.

[4]    Finally, there are plaintiffs' claims that Ciba-Geigy negligently failed to (1) inquire about chemicals that had previously been applied to the soil and (2) conduct soil tests themselves or advise plaintiffs to do so. To establish a case of actionable negligence plaintiffs must show that defendants owed them a duty, that defendants failed to exercise proper care in the performance of that duty, and that defendants' breach of that duty was the actual cause of plaintiffs' injuries. *See Burr v. Everhart*, 246 N.C. 327, 329, 98 S.E.2d 327, 329 (1957). The absence of any one of these essential elements will defeat a negligence action. *Id*. We hold that Ciba-Geigy did not owe plaintiffs a duty to (1) inquire about chemicals that had previously been applied to the soil or (2) conduct soil tests themselves or advise plaintiffs to do so. Therefore, Ciba-Geigy cannot be held liable for failing to take such actions.

The orders of the trial court granting summary judgment to defendants are

Affirmed.

Judges GREENE and McCRODDEN concur.