Chisum v. MacDonald, 2018 NCBC 33.

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

IN THE GENERAL COURT OF JUSTICE

SUPERIOR COURT DIVISION
17 CVS 2805

DENNIS D. CHISUM individually and
derivatively on behalf of JUDGES
ROAD INDUSTRIAL PARK, LLC,
CAROLINA COAST HOLDINGS, LLC,
and PARKWAY BUSINESS PARK,
LLC,

Plaintiff,

v.

JAMES A. MACDONALD, THE
MACDONALD LAW FIRM, PLLC,
MILTON R. HARDISON, HARDISON
& CHAMBERLAIN, CPA'S PA,
JUDGES ROAD INDUSTRIAL PARK,
LLC, CAROLINA COAST HOLDINGS,
LLC, and PARKWAY BUSINESS
PARK, LLC,

Defendants.

**ORDER AND OPINION ON
HARDISON'S MOTION TO DISMISS**

THIS MATTER comes before the Court on Defendants Milton R. Hardison and

Hardison & Chamberlain, CPA's PA's (Milton R. Hardison and Hardison &

Chamberlain, CPA's PA are collectively referred to herein as "Hardison") Motion to

Dismiss Pursuant to Rule 12(b)(6) (ECF No. 21), and Motion to Dismiss Derivative

Claims (ECF No. 23) (collectively, the "Motions to Dismiss").

THE COURT, after considering the Motions to Dismiss, the briefs in support

of and in opposition to the Motions to Dismiss, the arguments of counsel at the

hearing, and other appropriate matters of record, concludes that the Motion to

Dismiss Derivative Claims is GRANTED, and that the Motion to Dismiss Pursuant

to Rule 12(b)(6) is GRANTED, in part, and DENIED, in part, for the reasons set forth below.

> *Whitfield Bryson & Mason LLP, by Matthew E. Lee, Esq. and Jeremy R. Williams, Esq. and Sigmon Law, PLLC, by Mark R. Sigmon, Esq., for Plaintiff Dennis D. Chisum.*
>
> *Cranfill Sumner & Hartzog LLP, by Melody J. Jolly, Esq. and Elizabeth L. King, Esq., for Defendants Milton R. Hardison and Hardison & Chamberlain CPA's PA.*
>
> *Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by Gary S. Parsons, Esq. and Jessica Thaller-Moran, Esq., for Defendants James A. MacDonald and The MacDonald Law Firm, PLLC.*

McGuire, Judge.

## I.      FACTS AND PROCEDURAL BACKGROUND

1.      This action arises out of an ownership dispute regarding three North Carolina limited liability companies: Judges Road Industrial Park, LLC ("Judges Road"), Carolina Coast Holdings, LLC ("CCH"), and Parkway Business Park, LLC ("Parkway") (collectively, "the Chisum/Campagna LLCs" or "the LLCs").

2.      Plaintiff Dennis Chisum, Rocco J. Campagna ("Rocco"), and Richard J. Campagna ("Richard"; collectively, Rocco and Richard are referred to as "the Campagnas") formed each of the Chisum/Campagna LLCs in the mid-to-late 1990s for the purpose of developing and managing commercial properties and particularly commercial rental properties. (Verified Compl., ECF No. 1, at ¶ 21.) Plaintiff, Rocco, and Richard each contributed capital and received ownership interests in the Chisum/Campagna LLCs. (*Id.* at ¶ 25.) Plaintiff's original ownership stake in the

Chisum/Campagna LLCs was as follows: 33.333% ownership in Judges Road; 33.333% ownership in CCH; and 16.667% ownership in Parkway. (*Id.* at ¶ 16.)

3.      Defendant James A. MacDonald is an attorney who practices with the MacDonald Law Firm, PLLC (collectively, James A. MacDonald and the MacDonald Law Firm, PLLC are referred to as "MacDonald"). MacDonald provides legal counsel to the Chisum/Campagna LLCs and to Plaintiff individually. (*Id.* at ¶¶ 17–18, 22–23.)

4.      Hardison provides professional accounting services to each of the Chisum/Campagna LLCs. (*Id.* at ¶ 24.)

5.      Plaintiff alleges that MacDonald and Hardison assisted the Campagnas in an unlawful scheme to "oust" Plaintiff from the Chisum/Campagna LLCs by extinguishing Plaintiff's ownership interests in and transferring Plaintiff's interests in the LLCs to the Campagnas. (ECF No. 1, at ¶¶ 1–2.) The alleged scheme was carried out from 2007 until early 2016 through a series of unnecessary, "sham" capital calls, transfers of assets, and other improper financial transactions involving the Chisum/Campagna LLCs. (*Id.* at ¶¶ 29–124.)

6.      Plaintiff alleges that Hardison participated in the scheme to extinguish Plaintiff's membership interests in the Chisum/Campagna LLCs as follows:

7.      In May 2011, the Campagnas informed Hardison that CCH had assessed a capital call of $63,500 against Plaintiff to pay off the balance of a loan taken out by CCH, but for which Plaintiff was not responsible. (*Id.* at ¶¶ 49–65.) Hardison requested copies of the Chisum/Campagna LLCs Operating Agreements

because he was concerned about whether it was appropriate for the Campagnas to assess a capital call individually against Plaintiff. (*Id*. at ¶ 65.)

8. On July 8, 2011 the Campagnas, MacDonald, and Hardison met to discuss the elimination of Plaintiff's interest in CCH. (ECF No. 1, at ¶ 66.) The "parties in attendance decided [ ] Hardison should reflect the loss of [Plaintiff]'s interest in CCH" on Plaintiff's 2010 IRS Form K-1 for CCH. (*Id*. at ¶ 67.) Plaintiff received the Form K-1 in October 2011. (*Id*. at ¶ 68.)

9. Hardison deducted $63,500 from Plaintiff's capital account in CCH, leaving over $10,000 remaining in Plaintiff's capital account. Hardison determined that the remaining $10,000 "should be 'forfeited' to the Campagnas" and reflected such forfeiture on CCH's tax documents. (*Id*. at ¶¶ 71–72.) The forfeiture of membership interest is not permitted under the CCH Operating Agreement. (*Id*. at ¶ 75.)

10. In June 2012 Hardison wrongfully advised Judges Road, Rocco, and Richard that Plaintiff's interest had been diluted to the point that he had no remaining equity in the Judges Road. (ECF No. 1, at ¶ 74.) Hardison knew that extinguishing Plaintiff's interest in Judges Road would "cause significant damage" to Plaintiff. (*Id*. at ¶ 76.)

11. In the summer and fall of 2012, the Campagnas transferred all or substantially all of the assets of CCH to themselves and to another entity they own, The Camp Group, LLC. (*Id*. at ¶ 101.) Hardison reviewed the closing statements for all of these transfers. (*Id*.)

12. On January 18, 2013, Hardison assisted the Campagnas' transfer of all or substantially all of the assets of Parkway to themselves through the Camp Group. (ECF No. 1, at ¶ 104.)

13. Between April 15, 2014 and September 15, 2014, the Campagnas told Hardison that they believed Plaintiff was no longer a member of Judges Road. (*Id.* at ¶ 96.) Hardison prepared and filed tax documents reflecting that Plaintiff no longer had a membership interest in Judges Road despite "knowing this information was not correct or supported by [Judges Road's] books and financial records." (*Id.* at ¶ 97.)

14. Hardison has "treated [Plaintiff] as a non-member of Judges Road and Parkway since October of 2014." (*Id.* at ¶ 110.)

15. At unspecified times, Hardison has reviewed "excessive management fees" and personal expenses paid to the Campagnas by the Chisum/Campagna LLCs and has "classified them as loans." (*Id.* at ¶¶ 47–48.)

16. On July 19, 2016, Plaintiff filed suit against the Campagnas in the Superior Court of New Hanover County in *Chisum v. Campagna*, No. 2016-CVS-2419 (hereinafter "the Campagna Lawsuit"). (ECF No. 1, at ¶ 125.) The original complaint in the Campagna Lawsuit did not make derivative claims on behalf of the Chisum/Campagna LLCs against the Campagnas, and did not contain claims against MacDonald or Hardison.

17. On August 2, 2016, Plaintiff's counsel, on behalf of Plaintiff, sent letters to Judges Road, CCH, and Parkway (the "Demand Letters"). (*Id.* at ¶ 130; Aff. of

James A. MacDonald, ECF No. 24.1, at ¶¶ 2–7, Attachments I, II, and III.) The Demand Letters demanded that the LLCs make available to Plaintiff for inspection and copying books and records of the respective LLCs. The Demand Letters also accused the Campagnas of selling Judges Road's "primary asset" without Plaintiff's consent, attempting to oust Plaintiff from the Chisum/Campagna LLCs, using the LLCs' assets for their "personal benefit," and converting LLC property to themselves. (ECF No. 24.1, at Attachments I, II, and III.) The Demand Letters demanded that each of the LLCs "institute an action on its own behalf against Rocco Campagna and Richard Campagna, asserting claims for breach of fiduciary duty, constructive fraud, unfair and deceptive trade practices, constructive trust, and any other claims which may be appropriate as a result of their fraudulent capital calls, personal use [of the LLC's] property, and attempts to dissolve [Plaintiff]'s ownership interest in [the LLCs]." (*Id.*) The Chisum/Campagna LLCs did not respond to the Demand Letters. (ECF No. 1, at ¶ 130.)

18. Plaintiff alleges that he learned through discovery in the Campagna Lawsuit that MacDonald and Hardison were involved in "a conspiracy with the Campagnas to oust [Plaintiff] from the [Chisum/Campagna] LLCs." (ECF No. 1, at ¶ 127.) On February 8, 2017 Plaintiff filed an amended complaint stating derivative and individual claims against MacDonald and Hardison for breach of fiduciary duty, constructive fraud, professional negligence, civil conspiracy, unfair and deceptive trade practices, and punitive damages.

19.     In the Campagna Lawsuit, on March 13, 2017 Hardison filed motions to dismiss. On April 6, 2017, Plaintiff voluntarily dismissed without prejudice his claim for constructive fraud against Hardison. On July 7, 2017, Plaintiff voluntarily dismissed without prejudice all remaining claims against Hardison prior to the Court's decisions on the motions to dismiss.

20.     On July 21, 2017, Plaintiff filed the Verified Complaint in this action. The Verified Complaint attempts to state derivative claims on behalf of the Chisum/Campagna LLCs, and direct, individual claims by Plaintiff, against Hardison for breach of fiduciary duty (ECF No. 1, at ¶¶ 143–48, "Third Claim for Relief"); professional negligence (*Id*. at ¶¶ 149–53, "Fifth[1] Claim for Relief"); and civil conspiracy (*Id*. at ¶¶ 154–59, "Sixth Claim for Relief").

21.     On October 12, 2017, Hardison filed the Motions to Dismiss. On December 21, 2017 Plaintiff filed a brief in opposition to the Motions. (Pl.'s Br. Opp. to Hardison's Mot. to Dismiss, ECF No. 32.) Hardison did not file a reply brief. The Court held a hearing on the Motions, and they are now ripe for disposition.

II.     ANALYSIS

22.     Hardison moves to dismiss Plaintiff's derivative claims pursuant to North Carolina Rule of Civil Procedure 12(b)(1) (hereinafter "Rule(s)") on the grounds that Plaintiff lacks standing to pursue those claims because he has not made the pre-suit demand on the Chisum/Campagna LLCs required by N.C. Gen. Stat. § 57D-8-01

---

[1] In the Verified Complaint, the fourth claim raised is incorrectly labeled as the "Fifth Claim for Relief, and the fifth claim is incorrectly labeled as the "Sixth Claim for Relief."

(hereinafter "G.S."). (ECF No. 23, at pp. 1–2.)[2] In support of the motion, Hardison has filed the Affidavit of James A. MacDonald, with the Demand Letters attached as exhibits. (ECF No. 23.1, at Attachments 1, 2, and 3.) Hardison also seeks dismissal of Plaintiff's individual claims for breach of fiduciary duty, professional negligence, and civil conspiracy under Rule 12(b)(6). (ECF No. 21.)

23. "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple v. Commercial Courier Express Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 (2005). "Standing concerns the trial court's subject matter jurisdiction and is therefore properly challenged by a Rule 12(b)(1) motion to dismiss." *Fuller v. Easley*, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001) (citations omitted); s*ee also, Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878 (2002) ("Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction."). "A motion to dismiss for lack of subject matter jurisdiction is not viewed in the same manner as a motion to dismiss for failure to state a claim upon which relief can be granted." *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978). A court may consider matters outside the pleadings in determining whether subject matter jurisdiction exists. *Id.*; *see also, Keith v. Wallerich*, 201 N.C. App. 550, 554, 687 S.E.2d 299, 302 (2009).

24. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as

---

[2] Alternatively, Hardison moves for dismissal of the derivative claims under Rule 12(b)(6), contending that Plaintiff does not properly plead the derivative claims. For the reasons stated below in section II. A., the Court does not need to address Hardison's alternative grounds for dismissal of the derivative claims.

true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

25. The Court construes the complaint liberally and accepts all allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. HHS, Div. of Facility Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (citation and internal quotation marks omitted). "[T]he trial court can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Laster*, 199 N.C. App. at 577, 681 S.E.2d at 862.

26. The Court will first address the derivative claims, and then address Plaintiff's individual claims.

### A.    *Derivative claims*

27.    Hardison first argues that the derivative claims in the Verified Complaint should be dismissed for lack of subject matter jurisdiction.   Hardison contends that the Demand Letters do not meet the requirements of G.S. § 57D-8-01(a), which provides, in pertinent part, that

> [A] member may bring a derivative action if the following conditions are met:
>
> . . .
>
> (2) The member made written demand on the LLC to take suitable action, and either (i) the LLC notified the member that the member's demand was rejected, (ii) 90 days have expired from the date the demand was made, or (iii) irreparable injury to the LLC would result by waiting for the expiration of the 90-day period.

G.S. § 57D-8-01(a)(2).

28.    Hardison contends that the Demand Letters do not contain a sufficiently particular request for the LLCs to bring an action against Hardison.  Hardison argues that the Demand Letters describe, and seek corporate action by the Chisum/Campagna LLCs regarding, only alleged unlawful conduct of the Campagnas, and do not mention any conduct of, or seek action against, Hardison. (Hardison's Br. Supp. Mot. to Dismiss Deriv. Claims, ECF No. 24, at pp. 1–8.) Plaintiff concedes that the Demand Letters do not ask for any action against Hardison, but contends that "the subject matter of the claims that Mr. Chisum wanted the LLCs to bring was abundantly clear," and the Demand Letters "permitted the Chisum/Campagna LLCs to assess their rights and obligations in connection with

the alleged freeze-out, the capital calls, and the sale of the Judges Road property." (Pl.'s Br. Opp. Hardison Mot. to Dismiss, ECF No. 32, at pp. 8, 9.)

29. "By its very nature, a derivative action requires that the [member] bringing such an action have proper standing to bring the action." *Anderson v. Seascape at Holden Plantation, LLC*, 241 N.C. App. 191, 203, 773 S.E.2d 78, 87 (2015). "The challenge to the adequacy of any pre-suit demand is, *inter alia*, a challenge to the Court's subject matter jurisdiction over the derivative claims." *Petty v. Morris*, 2014 NCBC LEXIS 67, at *4 (N.C. Super. Ct. Dec. 16, 2014). In order to have standing to bring derivative claims, a plaintiff must have made a proper demand. *Miller v. Burlington Chem. Co. LLC*, 2017 NCBC LEXIS 6, at *26 (N.C. Super. Ct. Jan. 27, 2017); *see also*, G.S. § 57D-8-01. The purpose of the demand requirement is to

> [A]llow[ ] the corporation the opportunity to remedy the alleged problem without resort to judicial action, or, if the problem cannot be remedied without judicial action, to allow the corporation, as the true beneficial party, the opportunity to bring suit first against the alleged wrongdoers.

*Bridges v. Oates*, 167 N.C. App. 459, 467-68, 605 S.E.2d 685, 691 (2004) (citation omitted).

30. The pre-suit demand required by section 57D-8-01(a) "must be made with sufficient clarity and particularity to permit the corporation . . . to assess its rights and obligations and determine what action is in the best interest of the company." *Miller*, 2017 NCBC LEXIS 6, at *29 (quoting *Garlock v. Hilliard*, 2000 NCBC LEXIS 6, at *9 (N.C. Super. Ct. Aug. 22, 2000)).

> [T]he Court must [ ] determine whether the Demand Letter constituted a proper demand to take suitable action so as to satisfy the demand requirement. In so doing, the Court must compare the derivative claims asserted in a complaint against the specific demands a plaintiff has made prior to filing suit.

*Id.* at *30 (quotation marks omitted).

31. The Court has compared the derivative claims raised in the Verified Complaint with the Plaintiff's demands for suitable action in the Demand Letters. As an initial matter, the claims in the lawsuit involve different parties than the parties identified in the Demand Letters. The derivative claims in this lawsuit (relevant to the Motions to Dismiss) are brought against Hardison. The Demand Letters do not allege, or even suggest, that Hardison or any other party outside of the Campagnas participated in any wrongdoing. The Demand Letters do not request that the Chisum/Campagna LLCs investigate the conduct of, or potential claims against, Hardison or other parties. Finally, the Demand Letters expressly demand only that the LLCs file suit against Rocco and Richard, and do not ask that the LLCs bring legal action against any other parties.

32. A comparison of the causes of action raised against Hardison in the Verified Complaint against the claims discussed in the Demand Letters yields similar results. In the Verified Complaint, Plaintiff alleges claims for professional negligence and civil conspiracy against Hardison. The Demand Letters do not suggest that any of the conduct about which Plaintiff complains involved professional negligence, let alone negligence by Hardison. Rather, the Demand Letters make clear that Plaintiff alleges the Campagnas intentionally took actions to extinguish his ownership

interests and otherwise improperly benefitted themselves through their operation of the Chisum/Campagna LLCs. In addition, the Demand Letters do not suggest that the Campagnas conspired with anyone or obtained assistance from any parties outside of the Chisum/Campagna LLCs in engaging in the alleged misconduct.

33. Plaintiff also raises a derivative claim in this lawsuit against Hardison for breach of fiduciary duty. While the Demand Letters clearly allege that the Campagnas breached fiduciary duties, they do not claim that Hardison breached any duties towards the Chisum/Campagna LLCs.

34. Plaintiff contends that he only learned about Hardison's involvement in the Campagnas' misconduct through discovery in the Campagna Lawsuit, but does not explain why he did not make another demand on the Chisum/Campagna LLCs once he learned of Hardison's alleged conduct. The allegations in the Verified Complaint also establish that Plaintiff was aware that Hardison was the accountant for the Chisum/Campagna LLCs for years prior to filing this lawsuit. Plaintiff does not explain why he could not have asked the Chisum/Campagna LLCs to investigate whether the LLCs' outside accountants reviewed financial records that would have exposed the Campagna's actions in the Demand Letters.

35. The Court concludes that, under the facts alleged in this case, the demand that the Chisum/Campagna LLCs take action against Rocco and Richard Campagna did not provide the Chisum/Campagna LLCs with a sufficiently clear and particular demand for suitable action, as required by G.S. § 57D-8-01(a)(2), regarding claims against Hardison. *See, e.g.*, *Miller*, 2017 NCBC LEXIS 6, at *31–35 (directly

comparing the language of the demand letter against the allegations supporting each claim of the complaint, and holding that the general demand that the defendant LLC "take suitable action" in response to alleged injuries was insufficient to provide the plaintiff standing to later bring the derivative claims as alleged).

36. Hardison's motion to dismiss Plaintiff's derivative claims pursuant to Rule 12(b)(1) for lack of standing should be GRANTED, and the derivative claims dismissed WITHOUT PREJUDICE.

**B.    *Individual Claims***

37. Hardison seeks dismissal of Plaintiff's individual claims for breach of fiduciary duty, professional negligence, and civil conspiracy under Rule 12(b)(6). Hardison moves for dismissal on the grounds, *inter alia*, that: Plaintiff's claims in this action are barred by the two dismissal rule in Rule 41(a)(1); Plaintiff's direct, individual claims fail because Plaintiff has not alleged facts that would bring his claims under the exceptions as articulated in *Barger v. McCoy Hillard & Park*, 346 N.C. 650, 658, 488 S.E.2d 215, 219 (1997); and Plaintiff fails to allege the existence of a civil conspiracy involving Hardison. The Court will address these grounds for dismissal in turn.

**i.    The two dismissal rule does not bar Plaintiff's lawsuit**

38. Hardison argues that Rule 41(a)(1) bars Plaintiff from bringing this lawsuit because the voluntary dismissal of the claim for constructive fraud, and subsequent voluntary dismissal of the remaining claims, against Hardison in the Campagna Lawsuit constitute two dismissals for purposes of the "two dismissal" rule.

(Hardison's Mem. Supp. Mot. Dismiss, ECF No. 22, at pp. 5–8.) Plaintiff contends that the two dismissal rule applies only to dismissals of two separate *actions*, and not to separate dismissals of claims brought in one single action. (ECF No. 32, at pp. 6–7.)

39. Rule 41(a)(1)provides in pertinent part as follows:

> [A]n action or any claim therein may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before the plaintiff rests his case, . . . . Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of this or any other state or of the United States, an action based on or including the same claim.

40. The two-dismissal provision in Rule 41(a)(1) demonstrates "the legislature['s] inten[t] that a second dismissal of an action asserting claims based upon the same transaction or occurrence as a previously dismissed action would operate as an adjudication on the merits and bar a third action based upon the same set of facts." *Dunton v. Ayscue*, 203 N.C. App. 356, 358, 690 S.E.2d 752, 753 (2010) (quoting *Richardson v. McCracken Enterprises.*, 126 N.C. App. 506, 509, 485 S.E.2d 844, 846, *disc. review denied as to additional issues*, 347 N.C. 269, 493 S.E.2d 745 (1997), *aff'd per curiam*, 347 N.C. 660, 496 S.E.2d 380 (1998)).

41. In the Campagna Lawsuit, Plaintiff brought derivative and individual claims against Hardison for breach of fiduciary duty, constructive fraud, professional negligence, civil conspiracy, unfair and deceptive trade practices, and punitive damages. Plaintiff subsequently voluntarily dismissed, without prejudice, the

constructive fraud claim against Hardison in the Campagna Lawsuit. On July 7, 2017, Plaintiff voluntarily dismissed, without prejudice, the remaining claims against Hardison in the Campagna Lawsuit. In other words, Plaintiff dismissed the claims he made against Hardison in the Campagna Lawsuit *once*, albeit in two separate pleadings, and dismissed his action against Hardison in the Campagna Lawsuit only once. *C.f.*, *Hopkins v. Ciba-Geigy Corp.*, 111 N.C. App. 179, 182, 432 S.E.2d 142, 144 (1993).

42. In *Hopkins*, the plaintiff filed an initial action against two separate defendants; Ciba-Geigy Corp. and Lebanon Chemical Corporation. *Id.* The plaintiffs then filed two separate notices of voluntary dismissal pursuant to Rule 41(a)(1), the first dismissing Lebanon Chemical and the second dismissing Ciba-Geigy. *Id.* Once the two dismissals were filed, "plaintiffs had dismissed their entire first action." *Id.* When the plaintiffs filed a second lawsuit against Ciba-Geigy based on the same claims, Ciba-Geigy argued that the separate dismissals of the two defendants in the first lawsuit barred the plaintiffs' lawsuit pursuant to Rule 41(a)(1). *Id.* The Court of Appeals rejected the defendants' argument, holding:

> The two-dismissal rule, however, applies only when the plaintiff has twice dismissed *an action* based on or including the same claim. Here, plaintiffs dismissed their first *action* only once. Accordingly, the two-dismissal rule does not apply in this case. Consequently, plaintiffs' voluntary dismissal of their claim against defendant Ciba-Geigy did not constitute an adjudication on the merits pursuant to Rule 41(a)(1) and plaintiffs were not barred from bringing this action.

*Id.* (emphasis in original; internal citation omitted).

43. While *Hopkins* involved the dismissals of separate parties within the same first lawsuit, and not dismissals of separate claims, the principle is the same when applied to separate dismissals of all of the claims against Hardison in the Campagna Lawsuit. The *action* against Hardison has previously been dismissed only once. The two dismissal rule does not apply to this action.

44. Hardison's reliance on the holding in *Richardson v. McCracken Enterprises, Inc.* in support of its position is misplaced. In *Richardson*, the plaintiff voluntarily dismissed a Franklin County lawsuit, and then voluntarily dismissed a separate Wake County lawsuit, against the same defendant. Both lawsuits alleged claims arising from the contamination to the plaintiff's property caused by the defendant, but alleged different causes of action. The Court of Appeals held that two-dismissal rule in Rule 41(a)(1) barred the plaintiff's attempt to sue the defendant a third time because the two dismissed actions were "based upon the same core of operative facts relating to the contamination of plaintiffs' property, and all of the claims could have been asserted in the same cause of action." *Richardson v. McCracken Enters.*, 126 N.C. App. 506, 509, 485 S.E.2d 844, 846–47 (1997).

45. The facts in *Richardson* are distinguishable from the facts in this case. In *Richardson*, the plaintiff filed two separate lawsuits, or actions, against the same defendant arising from the same alleged wrong, and voluntarily dismissed both of those actions. Here, Plaintiff's action against Hardison arising from Hardison's alleged breach of fiduciary duty, negligence, and participation in a conspiracy has been dismissed only once. Considering the context of the *Richardson* decision and

the plain language of the statute, the Court concludes that the two-dismissal rule was not designed to apply to cases like this one, in which individual claims against a defendant are dismissed one time by separate voluntary dismissals within a single action, and then brought again as a separate action in a new lawsuit.

ii. **Plaintiff does not allege grounds that would permit him to pursue direct, individual claims for breach of fiduciary duty or professional negligence against Hardison**

46. Plaintiff makes direct, individual claims against Hardison for breach of fiduciary duty and professional negligence based on nearly identical allegations. Plaintiff alleges that Hardison breached fiduciary duties and was negligent by: "participating in and facilitating[:]" the "sham capital calls[;]" the improper assessments of capital calls against Plaintiff; and "declar[ing] that [Plaintiff] was no longer a member of the Chisum/Campagna LLCs" (ECF No. 1, at ¶¶ 146(a) and (b); *see also*, 151(a), (b), and (c)); "participating in and facilitating the attempt to freeze [Plaintiff] out of the Chisum/Campagna LLCs by . . . providing incorrect information to and wrongly advising Judges Road" that Plaintiff "had no remaining equity" in the LLCs (*Id.* at ¶¶ 146(c), 151(c)); preparing Form K-1s that "improperly reflect[ed] [Plaintiff]'s ownership interests in" the Chisum/Campagna LLCs (*Id.* at ¶¶ 146(g)–(h), ¶¶ 151(f)–(h)); and "participating in and facilitating" the improper transfers and sale of assets of the Chisum/Campagna LLCs to the Campagnas and entities controlled by them (*Id.* at ¶¶ 146(d) and (e), 151(d) and (e)). Plaintiff also alleges that Hardison breached fiduciary duties by "[d]irecting that [Plaintiff]'s ownership

interest in CCH be forfeited to the Campagnas in violation of the CCH Operating Agreement." (*Id.* at ¶ 146(f).)

47. Hardison contends that Plaintiff does not have grounds to bring the individual claims because he has not alleged Hardison owed him a special duty nor that Plaintiff suffered separate and distinct injury. (ECF No. 32, at pp. 16–17 (citing *Barger*, 346 N.C. at 658, 488 S.E.2d at 219).)

48. Generally, a shareholder of a corporation "cannot pursue individual causes of action for wrongs or injuries to the corporation." *Miller*, 2017 NCBC LEXIS 6, at *13 (citing *Barger*, 346 N.C. at 658, 488 S.E.2d at 219). However, there are two exceptions to the general rule "(1) where there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder, and (2) where the shareholder suffered an injury separate and distinct from that suffered the corporation and the other shareholders." *Id.* (hereinafter, the "*Barger* exceptions").

49. The *Barger* exceptions offer litigants who have suffered an injury in their individual capacity as a result of the actions of a third party two different, independent paths for maintaining a direct claim belonging to the corporation. *See, e.g., Green v. Freeman*, 367 N.C. 136, 143, 749 S.E.2d 262, 269 (2013) ("Thus, we next consider whether plaintiffs can recover under the special duty **or** unique personal injury exception" (emphasis added)). The *Barger* exceptions have been applied to members of limited liability companies. *Miller*, 2017 NCBC LEXIS 6, at *12–14; *see also, e.g., Dawson v. Atlanta Design Assocs., Inc.*, 144 N.C. App. 716, 719–20, 551 S.E.2d 877, 879–80 (2001) (applying the *Barger* exceptions to limited liability

companies); *Levin v. Jacobson*, 2015 NCBC LEXIS 111, at *13–15 n.4 (N.C. Super. Ct. Dec. 7, 2015) ("Although it originally discussed fiduciary duties in the context of corporations, *Barger* and its progeny apply equally to LLCs.").

50.     Preliminarily, Plaintiff concedes that "his claims that the Campagnas diverted assets, cash, and corporate opportunities from the Chisum/Campagna LLCs to outside entities are properly derivative claims," and that he cannot maintain individual claims for breach of fiduciary duty and professional negligence against Hardison based on those allegations  (ECF No. 32, at p. 11.)  Accordingly, Plaintiff's direct, individual claims for professional negligence against Hardison arising from alleged improper transfers or sales of Chisum/Campagna LLCs' assets, or diversions of corporate opportunities,  alleged in paragraphs 146(d) and (e), and 151(d) and (e) of the Verified Complaint must be dismissed.

51.     Plaintiff's remaining claims against Hardison for breach of fiduciary duty and professional negligence arise from Hardison's alleged participation in the Campagnas' efforts to extinguish Plaintiff's ownership interest in the Chisum/Campagna LLCs.  Plaintiff contends that he may pursue direct, individual claims against Hardison because the claims "involve a special duty to Mr. Chisum and/or harm to him that is distinct from any harm caused to the LLC as a whole." (ECF No. 32, at p. 11.)  However, the facts alleged in the Verified Complaint fail to support Plaintiff's contention.

52.     As an initial matter, Plaintiff has not alleged facts that would support a claim that Hardison owed a special duty to Plaintiff individually.  Plaintiff alleges

that "as the accountant . . . for the Chisum/Campagna LLCs . . . [Hardison] owed a fiduciary duty to Mr. Chisum, as one of the three members of the Chisum/Campagna LLCs." (ECF No. 1, at ¶ 145.) This is simply incorrect. In North Carolina the relationship between an accountant and a client is not *per se* fiduciary in nature. *E.g.*, *Harrold v. Dowd*, 149 N.C. App. 777, 784, 561 S.E.2d 914, 919 (2002) ("We have found no case stating that the relationship between accountant and client is *per se* fiduciary in nature.").

53. In order to plead a fiduciary relationship arising from an accountant-client relationship a plaintiff must "allege circumstances sufficient to show that a fiduciary relationship existed between the parties." *Id*. at 784, 561 S.E.2d 920.

> In general terms, a fiduciary relation is said to exist [w]herever confidence on one side results in superiority and influence on the other side; where a special confidence is reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence.

*King v. Bryant*, 369 N.C. 451, 464, 795 S.E.2d 340, 349 (2017) (internal citation and quotation marks omitted). "[I]t is not sufficient for plaintiff to allege merely that defendant had won his trust and confidence and occupied a position of dominant influence over him. . . . It is necessary for plaintiff to allege facts and circumstances . . . which created the relation of trust and confidence." *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981).

54. Plaintiff does not allege that Hardison provided Plaintiff with personal accounting services, only that Hardison was the Chisum/Campagna LLCs' accountant. Plaintiff has not alleged any facts or circumstances that suggest the

creation of a relationship of trust and confidence such that Hardison owed Plaintiff a fiduciary duty in his role as a member of the Chisum/Campagna LLCs.

55.     Plaintiff also argues that a special duty arose because "[Hardison] had a longstanding relationship with both the LLCs and with [Plaintiff], and the acts complained of arose directly out of that close, confidential relationship." (ECF No. 32, at p. 15.) Plaintiff, however, has not pleaded any facts that support the allegation that he had a "close, confidential relationship" with Hardison. To the contrary, Plaintiff does not allege that he ever had any direct communications, or any contact, with Hardison. Rather, Plaintiff simply alleges that Hardison prepared certain documents that Plaintiff subsequently received, or provided advice to the Chisum/Campagna LLCs regarding Plaintiff's interests in the LLCs that Plaintiff subsequently learned about.

56.     Finally, Plaintiff appears to argue that Hardison may have breached fiduciary duties and a duty of care owed to Plaintiff by withholding unspecified "information" from Plaintiff and "sending false K-1s to" Plaintiff. (ECF No. 32, at p. 15.) These arguments are not supported by pleaded facts. Plaintiff was a member, and not a manager, of the Chisum/Campagna LLCs, and Plaintiff does not allege facts that would support that Hardison had a duty to disclose information to Plaintiff. In addition, Plaintiff does not allege that Hardison sent the form K-1s to him, but only that he "received" the K-1s from an unspecified source. (ECF No. 1, at ¶¶ 68, 98.) Even if the Court assumes Hardison sent the K-1s to Plaintiff, Plaintiff does not

explain how this would impose fiduciary obligations on Hardison, and does not provide any legal support for such a proposition.

57. The Court is not required to accept Plaintiff's conclusory allegations that he had a confidential relationship with Hardison or that Hardison owed Plaintiff a fiduciary duty. Plaintiff does not allege that Hardison owed him a special duty, and Plaintiff cannot assert direct, individual claims for breach of fiduciary duty or professional negligence under the special duty *Barger* exception.

58. Plaintiff also contends that he may pursue direct, individual claims because he suffered an injury separate from the injury suffered by the Chisum/Campagna LLCs and its other members. Plaintiff, however, does not allege that the Chisum/Campagna LLCs or their members suffered any injury, or have claims arising, from the efforts to extinguish his ownership interests.

59. In order to sustain a direct, individual claim under the separate injury exception, it is essential that Plaintiff allege that the Chisum/Campagna LLCs or the other members of the LLCs suffered an injury from Hardison's alleged breach of fiduciary duty or negligence that would give rise to a claim belonging to the Chisum/Campagna LLCs. *Chisum v. Campagna*, 2017 NCBC LEXIS 102, at *22–23 (N.C. Super. Court Nov. 7, 2017); s*ee also, Barger*, 346 N.C. at 659, 488 S.E.2d at 219 (holding that a shareholder may bring a direct, individual claim for injuries to the shareholder's corporation where "the injury suffered by the shareholder is separate and distinct from the injury sustained by the other shareholders or the corporation itself"); *Piazza v. Kirkbride*, 785 S.E.2d 695, 713, 2016 N.C. App. LEXIS 371, at *51

(2016) ("Here, the [p]laintiffs' claim is not brought as a derivative action, but is brought because they suffered individual injury distinct from the injury sustained by the corporation itself."). The *Barger* exceptions allow a member to pursue claims **belonging to** the limited liability company against a third party. Where the company and its other members have suffered no injury, and the corporation has no claim against the third party for the alleged wrong, a plaintiff cannot establish a separate and distinct injury. *Plasman v. Decca Furniture (USA), Inc.*, 2016 NCBC LEXIS 80, at *13 (N.C. Super. Ct. Oct. 21, 2016) (Noting that it is a "well-established rule that shareholders . . . generally may not bring *individual actions to recover* what they consider *their share of* the *damages suffered by the corporation*.") (emphasis added; quotation omitted).

60.   Plaintiff does not allege that the Chisum/Campagna LLCs or the Campagnas were injured by the attempts to extinguish Plaintiff's membership interests in the LLCs. In fact, Plaintiff concedes that "the incorrect information Mr. Hardison provided to the Chisum/Campagna LLCs regarding [Plaintiff]'s ownership interest only resulted in harm to [Plaintiff], not the Chisum/Campagna LLCs," and the "sham capital calls . . . only harmed [Plaintiff]" and "did not affect the value of the LLCs." (ECF No. 32, at p. 12 (emphasis added).) This concession is fatal to Plaintiff's attempt to bring direct, individual claims against Hardison based on these allegations. Since Plaintiff has not alleged, or argued, that the Chisum/Campagna LLCs or the Campagnas suffered injuries as a result of Hardison's breach of fiduciary duty or negligence related to the attempts to eliminate Plaintiff's membership

interests, his direct, individual claims for breach of fiduciary duty and professional negligence must be dismissed.

61. Hardison's motion to dismiss Plaintiff's individual claims for breach of fiduciary duty and professional negligence against Hardison should be GRANTED.

### iii. Plaintiff has properly pleaded that Hardison was part of a civil conspiracy

62. Plaintiff also alleges that Hardison participated in a civil conspiracy. (ECF No. 1, at ¶¶ 154–59.) "It is well established that 'there is not a separate civil action for civil conspiracy in North Carolina.'" *Plasman*, 2016 NCBC LEXIS 80, at *33 (quoting *Esposito v. Talbert & Bright, Inc.*, 181 N.C. App. 742, 747, 641 S.E.2d 695, 698 (2007)). In order to properly plead a civil conspiracy, a complaint must allege "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted *by one or more* of the conspirators; and (4) pursuant to a common scheme." *Elliott v. Elliott*, 200 N.C. App. 259, 264, 683 S.E.2d 405, 409 (2009) (emphasis added).

> In civil conspiracy, recovery must be on the basis of sufficiently alleged wrongful overt acts. The charge of conspiracy itself does nothing more than associate the defendants together and perhaps liberalize the rules of evidence to the extent that under proper circumstances *the acts and conduct of one might be admissible against all.*

*Shope v. Boyer*, 268 N.C. 401, 405, 150 S.E.2d 771, 773–774 (1966); *see also*, *GoRhinoGo, LLC v. Lewis*, 2011 NCBC LEXIS 39, at *20 (N.C. Super. Ct. Sept. 9, 2011) ("Having joined the conspiracy, [two individual defendants] became exposed to liability with [co-defendant] and any other co-conspirators for damages caused by any act in furtherance of the common scheme.").

63. Plaintiff alleges that the Campagnas, MacDonald, and Hardison conspired "to unlawfully extinguish [Plaintiff]'s membership interests in the Chisum/Campagna LLCs, transfer all Chisum/Campagna LLCs [sic] assets to" the Campagnas, and "dissolve each of the Chisum/Campagna LLCs." (ECF No. 1, at ¶ 155.) Plaintiff further alleges that the Campagnas, MacDonald, and Hardison committed unlawful acts in furtherance of the conspiracy. (*Id*. at ¶¶ 157–58.) Finally, Plaintiff alleges that he has suffered damages as result of the conspiracy. (*Id*. at ¶ 159.)

64. Hardison argues that Plaintiff cannot maintain a claim for civil conspiracy because the other claims against Hardison fail, and because Plaintiff has not sufficiently alleged an agreement between Hardison and the other Defendants. (ECF No. 32, at pp. 14–15.) Hardison's first argument is incorrect. The dismissal of the claims against Hardison for breach of fiduciary duty and professional negligence does not bar him from liability for damages resulting from the other conspirators' acts. *Shope*, 268 N.C. at 405, 150 S.E.2d at 774 ("To create civil liability for conspiracy there must have been an overt act committed by one or more of the conspirators pursuant to the scheme and in furtherance of the objective" (quotation omitted).). Here, Plaintiff has alleged that co-conspirators MacDonald and the Campagnas committed unlawful overt acts to extinguish Plaintiff's membership interests in the Chisum/Campagna LLCs that resulted in injury to Plaintiff.

65. The allegations regarding Hardison's knowledge of and agreement to the alleged conspiracy are somewhat contradictory. Plaintiff alleges that Hardison knew

about the scheme and participated in and facilitated certain actions in support of the conspiracy. (*See e.g.*, ECF No. 1, at ¶¶ 48, 64, and 76.) Other allegations, however, suggest that Hardison raised concerns about the attempts to extinguish Plaintiff's interest in CCH, and raised questions about when Hardison first learned about the scheme. (ECF No. 1, at ¶¶ 65, 95 and 96.)

66. Nevertheless, the Court concludes that at this stage of the case, Plaintiff sufficiently pleads that Hardison knew of and agreed to the scheme to eliminate Plaintiff's membership interests in the Chisum/Campagna LLCs, and that Hardison performed lawful actions in furtherance of that scheme and/or can be held liable for the alleged unlawful acts performed by MacDonald and the Campagnas. Accordingly, Defendants' motion to dismiss Plaintiff's individual claim for civil conspiracy should be DENIED.

THEREFORE, IT IS ORDERED that Defendants' Motion to Dismiss Plaintiff's claims against Hardison from the Verified Complaint is GRANTED, in part, and DENIED, in part, as follows:

1.    Hardison's motion to dismiss Plaintiff's derivative claims for lack of standing is GRANTED, and the derivative claims are dismissed WITHOUT PREJUDICE.

2.    Hardison's motion to dismiss Plaintiff's individual claim for breach of fiduciary duty is GRANTED.

3.    Hardison's motion to dismiss Plaintiff's individual claim for professional negligence is GRANTED.

4.    Hardison's motion to dismiss Plaintiff's individual claim for civil conspiracy is DENIED.

SO ORDERED, this 18th day of April, 2018.

　/s/ Gregory P. McGuire　
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases